ROEPER v. UNITED STATES et al.

No. A–17506.

United States District Court
E. D. New York.

March 22, 1949.

Purdy, Lamb & Catoggio, New York City, and Thomas J. Irving, New York City, for libelant.

Burlingham, Veeder, Clark & Hupper, New York City, and G. Hunter Merritt, New York City, for respondents.

RAYFIEL, District Judge.

This is an action for personal injuries sustained by the libelant on December 27, 1944 while on board the SS Carl Schurz.

The libelant was employed by Birch, Morrison & Knudson in New York under a contract, dated July 3, 1944, under the terms of which he was employed as an asphalt plant operator in the Aleutian Islands. The said contract provided, among other things, that the employer was to pay the libelant's transportation and traveling expenses from New York to the Aleutian Islands and return.

He arrived in the Aleutians in the latter part of July, 1944, and was employed on the island of Shemya until December, 18th, 1944, when he was taken by tugboat to Attu, where he remained until December

27th, 1944, when, pursuant to orders issued by post headquarters, United States troops, Shemya, Alaska on December 15th, 1944, he and a number of other civilians were taken aboard the SS Carl Schurz. This vessel was a Liberty ship which had been converted into a troop transport.

The libelant and the other civilians were directed by the Naval personnel aboard the vessel to bunks in a compartment located two decks below the main deck. Before the civilians boarded the ship, it had taken aboard military personnel for transportation to the United States. Some of these soldiers were quartered in bunks in the compartment situated on the deck immediately above the one on which the libelant's bunk was located.

Some time thereafter mess call was sounded, and after dinner the libelant returned to his bunk. Shortly thereafter the civilians were ordered to get their mattresses and blankets. The libelant and the other civilians ascended the stairs to the deck above, proceeded through the aisles of bunks, the mess hall, and down a stairway to the bow of the ship, to the place where the mattresses and blankets were stored. The libelant was issued a mattress about six feet long, thirty inches wide and two inches thick, and one blanket. He then put the blanket inside the mattress which he then rolled up. He carried the roll under his arm, went up the stairs to the deck below the main deck, through the mess hall, and then entered the soldiers' quarters. This part of the ship consisted of tiers of bunks, four or five high, between which was an aisle, between 2½ and 3 feet wide, along which he was obliged to pass in order to reach the stairway leading to the deck below, on which his bunk was located. Barracks bags belonging to military personnel were suspended from the ends of some of the bunks on both sides of the aisle, and extended into the aisle. Several barracks bags were lying on the floor of the aisle.

He had been carrying the mattress roll under his arm, but, because the aisle was narrow and obstructed, he was obliged to hold the roll in front of him in order to make progress through the aisle.

The weather was very rough, with a strong wind blowing and quite a heavy sea, causing the ship to lurch from side to side frequently. After forcing his way almost to the end of the aisle, and within a few feet of the head of the stairway leading to the deck below, his mattress roll struck a suspended barracks bag, causing him to lose his balance at the same time that the ship suddenly lurched.

He was thrown toward the stairway, struck a garbage can which stood at the head of the stairway, and was precipitated to the landing or deck below.

He was taken to his bunk, and then on a stretcher to the sick bay. He suffered pains in his back, had trouble urinating, and had some difficulty moving his legs. He also sustained two cuts on his shin. He was kept in the sick bay for two days until the ship arrived at Adak, where he was taken ashore by stretcher and taken to the Naval hospital, where x-rays were taken which disclosed a transverse fracture of the sacrum at the level of the third segment. He was placed in a cradle cast from the buttocks up to around his shoulders. He was then returned to the sick bay on board the SS Carl Schurz, where he remained until the ship arrived at Seattle about a week later. He was then taken by ambulance to the Virginia Mason hospital where he remained for about ten days. Before he left the hospital the cast was removed and his back was strapped with adhesive tape.

He arrived at his home in Rockville Center, New York, on January 23rd or 24th, 1945 and was there confined until sometime in April, during the first month of which period he was confined to bed. He returned to work on May 15th, 1945, as a plumbing foreman for the Raymond Concrete Pile Company in Venezuela, and has been employed ever since.

■ The libelant, having failed to offer any proof that the respondent, American Mail Line, Ltd., was in possession or control of the SS Carl Schurz, or any part of it, the libel against it is dismissed.

■ This leaves as the sole respondent the United States of America. At the be-

ginning of the case, libelant moved to amend the libel to plead his cause of action in the alternative either under the suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., or under the Public Vessels Act, 46 U.S.C.A. § 781 et seq. This motion was granted. The proof adduced at the trial discloses that the ship was under the jurisdiction and control of the United States Navy, and was used for the transportation of personnel and military supplies, and is therefore a public vessel and comes within the purview of the Public Vessels Act. What remains, then, is to determine whether the respondent, United States of America was negligent.

It is the libelant's contention that the respondent United States of America was negligent in that it permitted the aisle through which he was obliged to pass to be so obstructed that he could not pass through it safely carrying the mattress and blanket, and that he could not maintain his balance by reason of the fact that he had to force his way through the barracks bags which were hung on both sides of the aisle; that that condition, supplemented by the pitch of the ship as she lurched, was the proximate cause of his injuries.

The respondent United States of America contends that it was not negligent, and that the cause of the libelant's fall was the unavoidable lurch of the vessel caused by weather conditions; it contends also that the libelant was at most a mere licensee to whom the respondent owed only the duty of exercising reasonable care for his safety.

■ I cannot agree with the respondent's contention that it was not negligent in permitting the aisle to be obstructed by the barracks bags. The libelant had been ordered by the Naval personnel in charge of the ship to get the mattress and blanket which he was carrying. He had to carry this bulky roll through the troop compartment in order to get to the stairway which led to the deck below, where his bunk was located. The aisles should have been kept clear to permit easy and uninterrupted passage by the libelant with his mattress and blanket. The obstruction created by the presence of the barracks bags made it necessary for the libelant to push and elbow his way through the aisle while trying to steady himself against the lurching of the ship, and this caused him to lose his balance as he reached the end of the aisle, resulting in his falling down the stairs. I therefore find for the libelant and against the respondent, United States of America.

What damage was suffered by the libelant by reason of his injuries? The only medical evidence adduced was the clinical history signed by Lt. Wayne M. Rounds, senior medical officer of the SS Carl Schurz. It gives a resumé of the findings and treatment while the libelant was aboard the SS Carl Schurz. There is no evidence showing that the injuries will be permanent. The testimony established that the libelant was injured on December 27th, 1944; that he was paid by his employers, Birch, Morrison & Knudson, until January 23rd, 1945; that he returned to work on May 15th, 1945.

■ The most accurate basis available to the Court for determining the libelant's loss of earnings during the period between January 23rd, 1945 and May 15th, 1945, is the salary or wage which he received on resuming employment on the latter date, to wit: the sum of $400 per month. That amounts to $1493.33, from which should be deducted compensation at the rate of $25 per week paid to the libelant for 16 weeks, leaving a balance of $1093.33. I find that the libelant is entitled to recover from the respondent, United States of America, the additional sum of $1500, as compensation for pain and suffering.

### Findings of Fact

(1) The libelant is a resident of the Eastern District of New York.

(2) The United States of America is a sovereign power and was and is the owner and operator of the SS Carl Schurz.

(3) In and about the month of July, 1944, the libelant was employed by Birch, Morrison and Knudson, in New York for work in the Aleutian Islands under an agreement which provided that the employer was to pay the libelant's transportation and travel expenses to the Aleutian

Islands and return. His wages were $68 per week and during the term of his employment in the Aleutian Islands he earned approximately $125 per week which included overtime compensation.

(4) The libelant proceeded from New York to Seattle, Washington and thence to the Aleutian Islands where he arrived on or about July 23rd, 1944.

(5) The libelant's employment terminated in December, 1944 and on the 27th day of that month, the libelant and other civilian employees boarded the SS Carl Schurz at Attu, Alaska for return to the United States, his transportation charges being paid by his employer.

(6) After boarding the SS Carl Schurz, the libelant and the other civilian employees were directed to their bunks located two decks below the main deck by a member of the Naval personnel in authority on the vessel.

(7) A number of soldiers had boarded the vessel prior to the libelant, and some of them were occupying bunks situated on the deck immediately below the main deck and one deck above the deck on which the libelant's bunk was located.

(8) At about 6:30 on December 27th, 1944, the libelant was directed to go to the lower hold of the vessel to obtain a mattress and blanket for his bunk.

(9) The aisle between the soldiers' bunks was between 2½ and 3 feet wide; several barracks bags lay on the floor of the aisle and a number of barracks bags were suspended from the bunks and extended into the aisle.

(10) The mattress issued to the libelant was about 6 feet long, 30 inches wide and 2 inches thick. The libelant placed the blanket on the mattress and rolled the mattress up and then proceeded toward the point where his bunk was located.

(11) In returning to his bunk, the libelant proceeded to the entrance to the soldiers' quarters and along the aisle between their bunks in order to gain access to the stairway leading to the deck below on which his bunk was located.

(12) By reason of the narrowness of the aisle the libelant, who was carrying the roll under his arm, was obliged to transfer it to a point immediately in front of him in order to make progress along the aisle.

(13) Before the SS Carl Schurz left Attu it had begun to snow. There was a strong wind blowing and a rough sea, and those weather conditions existed immediately prior to the time when the libelant suffered his injuries.

(14) The libelant proceeded along the aisle and was obliged at times to force his way through the aisle and past some of the protruding barracks bags, while trying to steady himself against the roll and lurch of the ship.

(15) As the libelant, carrying the mattress roll, reached a point a few feet from the head of the stairway leading to the deck below his mattress struck a suspended barracks bag causing him to lose his balance at the moment the ship lurched, and he was thrown against a garbage can which stood at the head of the stairway, and was then precipitated down the stairs to the deck below.

(16) The libelant was rendered either unconscious or semi-conscious and was removed to the sickbay. He suffered pains in his back, had trouble urinating, and had some difficulty moving his legs. He also suffered cuts on his shin. He remained in the sickbay until the SS Carl Schurz reached Adak.

(17) At Adak he was placed on a stretcher and taken to the Naval hospital in an ambulance. X-rays taken at the hospital discovered a transverse fracture of the sacrum at the level of the third segment.

(18) The libelant was placed in a cradle cast extending from his buttocks to around his shoulders and was returned to the sickbay on board the SS Carl Schurz where he remained until the ship reached Seattle about a week thereafter.

(19) When the vessel arrived at Seattle he was placed in an ambulance and taken to the Virginia Mason hospital where he remained for about ten days at which time the cast was removed and he returned to New York City where he arrived on or about January 23rd, 1945.

(20) He arrived at his home in Rockville Center, New York on or about January 23rd, 1945 and was confined there until some time in April, during the first month of which period he was confined to bed. He returned to work on May 15th, 1945.

(21) The libelant was injured by reason of the fact that the aisle between the soldiers' bunks was so cluttered with barracks bags that he was unable to proceed through and along the aisle, carrying the mattress, without risk and danger of injury.

(22) The libelant was not guilty of contributory negligence.

(23) During the period from January 23rd, 1945 until May 15th, 1945 he was unable to accept employment and on the latter date he acquired a position which provided for compensation at the rate of $400 per month.

(24) During the aforementioned period commencing January 23rd, 1945 and terminating May 15th, 1945, a period of 16 weeks, he received compensation of $25 per week.

(25) At the rate of $400 per month his loss of earnings for the period between January 23rd, 1945 and May 15th, 1945, was $1493.33 from which should be deducted the aforementioned compensation payments, leaving a net loss of earnings of $1093.33.

I find that the libelant is entitled to recover from the respondent, United States of America the sum of $1500 as compensation for his pain and suffering.

## Conclusions of Law

(1) The respondent, United States of America failed to exercise reasonable care.

(2) The libelant was a passenger on the SS Carl Schurz and the respondent, United States of America the owner of the said vessel did not exercise the degree of care to the libelant, a passenger, which the owner of the vessel owed to him.

(3) The libelant was not guilty of contributory negligence.

(4) The libelant is entitled to a decree against the United States of America for pain and suffering in the sum of $1500 and for loss of earnings in the sum of $1093.33.

(5) The libel against the American Mail Line Ltd. must be dismissed.