**Rudolph SHIELDS, Plaintiff,**

v.

**UNITED STATES of America and Sea-Land Corporation, Defendants.**

**No. 86–992–Civ–J–14.**

United States District Court, M.D. Florida, Jacksonville Division.

June 11, 1987.

Walter Steineman, Philadelphia, Pa., Gregory Johnson, Jacksonville, Fla., for plaintiff.

David V. Hutchinson, Washington, D.C., J.W. Prichard, Jr., Jacksonville, Fla., for defendants.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case came on to be heard upon the Defendant, Sea-Land Corporation's Motion To Dismiss, filed herein on January 26, 1987. Pursuant to the Court's order of March 31, 1987, the defendant also filed a Supplemental Memorandum in Support of its Motion to Dismiss on May 1, 1987. The plaintiff filed responses to the motion and supplemental memorandum on February 23 and May 18, 1987, and the Court held a hearing on the motion on May 8, 1987.

In his Complaint, filed herein on September 30, 1986, the plaintiff alleges that he was injured while he was employed on a vessel owned and controlled by the defendant United States and operated by the defendant Sea-Land, Inc. [hereinafter "Sea-Land"]. In Counts One and Two, the plaintiff seeks damages suffered as a result of the defendants' negligence, the vessel's unseaworthiness, and the defendants' breach of their obligations to provide wages, adequate medical care, maintenance and cure. In Count Three, the plaintiff seeks punitive damages from Sea-Land for its arbitrary and capricious denial of his maintenance and cure claims.

In its motion to dismiss, Sea-Land argues that under the "exclusivity" provision of the Public Vessels Act [hereinafter "PVA"] and the Suits in Admiralty Act [hereinafter "SAA"],[1] a claimant's exclusive remedy for injuries suffered on a vessel owned and operated by the United States is against the United States. According to Sea-Land, this provision divests the Court of subject matter jurisdiction over any of the claims alleged against Sea-Land in this case.

In response, the plaintiff contends that the exclusivity provision at most requires dismissal of Sea-Land with respect to Counts One and Two.[2] With respect to Count Three, the plaintiff suggests several reasons why the exclusivity provision is inapplicable. First, no adequate remedy is available against the United States for Sea-Land's arbitrary denial of maintenance and cure benefits. Second, Sea-Land's wrongful denial of maintenance and cure benefits is a different subject matter from the negligence and unseaworthiness claim against the United States.

### Introduction

The primary issue presented by this motion is whether the exclusivity provision of the SAA precludes a seaman from seeking punitive damages and attorney's fees from an agent of the United States for its willful and arbitrary denial of maintenance and cure benefits. This issue is apparently one of first impression: the Court is not aware of, and the parties have been unable to cite, any case law applying the exclusivity provision in the context of an arbitrary and

---

1. 46 U.S.C. § 745. Because the PVA incorporates the provisions of the SAA, including the exclusivity provision, see 46 U.S.C. § 782, the Court need not decide at this time whether this case falls under the PVA or SAA.

2. The plaintiff suggests that no part of the Complaint should be dismissed under the exclusivity provision because Sea-Land is not an agent or employee of the United States within the meaning of that provision. According to the plaintiff, the United States did not exert "operational control" over Sea-Land in this case. However, regardless of the degree of control exercised in this case, the Court finds, based on the allegations of the Complaint, that Sea-Land was indeed an agent of the United States within the meaning of the exclusivity provision. See Cruz v. Marine Transport Lines, Inc., 634 F.Supp. 107 (D.N.J.1986) (independent contractor was "agent" within meaning of section 745).

willful denial of maintenance and cure benefits.[3]

In deciding whether Sea-Land is a suable defendant in this case, the court must reconcile two apparently conflicting federal policies. On one hand, the exclusivity provision deems that the United States shall be the sole defendant in public vessels cases. On the other hand, federal policy favoring maintenance and cure payments requires punitive damages to be awarded when such payments have been willfully and arbitrarily denied. The conflict arises because the United States, the sole defendant in traditional public vessels cases, has not waived its sovereign immunity with regard to punitive damages. To resolve the conflict, the Court will analyze the policies and precedent surrounding both the exclusivity provision and the maintenance and cure remedy.

### *The Exclusivity Provision*

■ A seaman who is injured as a result of the negligence of his private employer ordinarily may seek recovery against that employer under the Jones Act, 46 U.S.C. § 688, and under general maritime law. However, the Suits in Admiralty Act [hereinafter "SAA"], 46 U.S.C. §§ 741–52, expressly forecloses such a remedy when the employer acts as an agent of the United States. Section 745 of the SAA states in pertinent part that "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States...." 46 U.S.C. § 745. This "exclusivity provision" precludes recovery against an agent of the United States in any case where he commits a wrongful act on a public vessel or merchant vessel of the United States and a remedy is available against the United States under the SAA.[4]

The legislative history behind this provision reveals that its purpose is to protect the rights of seamen. Prior to 1950, seamen seeking to recover for the wrongful acts of agents of the United States faced an area of law which was mired in uncertainty. Many actions against private employers were dismissed, and plaintiff seamen turned to United States as a source of recovery. The seamen often found, however, that their right to sue under the SAA and PVA had become barred by the expiration of the applicable statute of limitations. This situation persisted until the Supreme Court in *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1948), "[made] it plain that the agent, while liable for the negligence of its own employees, was not liable for the negligence of the civil-service masters and crews with whom the United States manned the vessels." S.R. 1782, 81st Cong., 2d Sess. (1950); 1950 U.S.Code Cong. Service, p. 4209–10.

In 1950, Congress amended section 745 of the SAA to codify the exclusivity rule of *Cosmopolitan Shipping.* By adding the exclusivity rule, Congress sought to unequivocally designate the United States as the one to whom a claim for loss caused by the government's ship should be directed. *Id. See also Smith v. United States,* 346 F.2d 449, 453–54 (4th Cir.1965).[5] No longer

---

**3.** Upon questioning by the Court regarding the paucity of case law on denials of maintenance and cure benefits, counsel for the plaintiff explained that, until 1981, merchant seamen who suffered injuries on a vessel were automatically entitled to treatment from the United States Public Health Service. After 1981, when the Public Health Service closed, seamen were forced to turn to their employers for approval of medical treatment under employee health insurance policies.

**4.** For this reason, the court will grant the motion to dismiss with respect to Counts One and Two. *See Doyle v. Bethlehem Steel Corp.,* 504 F.2d 911 (5th Cir.1974) (negligence and unseaworthiness remedy available under SAA);

*Dunstrup v. The Richmond P. Hobson,* 112 F.Supp. 851 (E.D.N.Y.1953) (maintenance and cure remedy available under SAA).

**5.** The amendment was also designed to extend the time limit within which certain suits in admiralty could be brought against the United States, and to facilitate wartime secrecy. The goal of secrecy would be furthered because any suit brought solely against the United States would necessarily be litigated in the admiralty courts, where *in camera* proceedings were routinely available. S.Rep. 1962, 81st Cong., 2d Sess. (1950).

would seamen who were injured by the negligent conduct of the captain or crew of United States vessels be victimized by legal confusion regarding their proper remedy.

Courts interpreting section 745 subsequent to 1950 have construed the exclusivity provision broadly in light of this remedial purpose. *See, e.g., Cruz v. Marine Transport Lines, Inc.,* 634 F.Supp. 107 (D.N.J.1986) (independent contractor for United States was "agent" within meaning of section 745); *Santos v. RCA Service Co.,* 603 F.Supp. 943 (E.D.La.1985) (seaman must proceed against United States despite indemnification clause in employer's contract). As stated by the court in *Petition of United States,* 367 F.2d 505, 512 (3d Cir.1966), *cert. denied,* 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967), "any other construction would perpetuate the very uncertainty as to whom a seaman should sue for injury caused by a public vessel which congress has sought to eliminate."

■ The Court finds that, despite its broad construction, the language and intent of the exclusivity provision of section 745 do not require dismissal of Sea-Land in this case. The exclusivity provision mandates that in cases "where a remedy is provided by [the SAA]," such remedy is "exclusive of any other action *by reason of the same subject matter ...*" 46 U.S.C. § 745 (emphasis supplied). With regard to the "subject matter" of an arbitrary and willful denial of maintenance and cure benefits, no remedy is provided by the SAA. Thus, the plaintiff is not precluded from maintaining an action against the agent of the United States in this case.

Sea-Land argues that a proper construction of section 745's exclusivity provision requires dismissal of agents of the United States in all public vessels cases, even where the seaman thereby loses a valuable aspect of his traditional remedy. Sea-Land cites two cases for this proposition: *Lovetro v. United States,* 602 F.Supp. 574 (S.D. N.Y.1984), and *Cabales v. United States,* 300 F.Supp. 1323 (S.D.N.Y.1968). In both cases, the plaintiff seaman was precluded from recovering a double wage penalty because the United States had not waived its sovereign immunity in this area, and be-

cause the exclusivity provision required dismissal of the contractor and master of the vessel.

The Court finds that cases involving seamen's claims for double wage penalties are distinguishable from the present case. The decision to withhold wages and its consequent penalty are inextricably related to the operation of a United States vessel. *See, e.g., Lovetro,* 602 F.Supp. at 574 (wages withheld because plaintiff lost his glasses and was determined unfit for duty); *Cabales,* 300 F.Supp. at 1324 (wages withheld because plaintiff deserted ship). Section 745 requires dismissal in such cases because they are "suits against those acting for the United States in the management of its vessels," *Cabales,* 300 F.Supp. at 1325, and therefore involve a subject matter for which the SAA provides a remedy.

■ In the present case, the plaintiff seeks recovery from Sea-Land not for the wrongful acts of its master or crew in the management of a United States vessel, but for the arbitrary and willful conduct of its insurance department in handling benefits claims. The Court finds that such arbitrary claims handling is an entirely different subject matter from the negligent conduct for which the SAA provides a remedy. The Court further finds that the SAA was not designed to preclude recovery for arbitrary claims handling. *See* S.R. 1782, 81st Cong., 2d Sess. (1950), 1950 U.S.Code Cong. Service, p. 4209–10 (under *Cosmopolitan Shipping,* agent, although given immunity from suits based on the negligence of the civil-service masters and crews with whom the United States manned the vessels, remains liable for the negligence of its own employees).

### Maintenance and Cure

■ The Court's decision to allow the plaintiff to proceed against Sea-Land on Count Three is buttressed by the strong federal policy regarding maintenance and cure. Federal courts long ago established the rule that when a seaman becomes ill or suffers an injury while in the service of a vessel, he is entitled to daily subsistence and medical treatment until his maximum cure has been reached. 1B *Benedict on*

*Admiralty* § 42 (7th rev. ed. 1981). The rule, designed to induce seamen to be loyal to their ship and to work under unfavorable conditions, has been liberally applied in favor of the seaman. Courts have consistently held that maintenance and cure benefits are an implied contractual obligation of the shipowner, and that neither the negligence of the shipowner nor the contributory negligence of the seaman need be considered. *Id.*

In light of the strong federal policy in favor of maintenance and cure benefits, courts have applied the remedies of attorney's fees and punitive damages to deter shipowners and masters from callously denying those benefits. *See Vaughn v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (attorney's fees); *Incandela v. American Dredging Co.,* 659 F.2d 11 (2d Cir.1981) (attorney's fees); *Kraljic v. Berman Enterprises, Inc.,* 575 F.2d 412 (2d Cir.1978) (attorney's fees); *Parker v. Texaco, Inc.,* 549 F.Supp. 71 (E.D.La.1982) (attorney's fees); *Holmes v. J. Ray McDermott & Co.,* 734 F.2d 1110 (5th Cir.1984) (punitive damages); *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048 (1st Cir.1973) (punitive damages). The need for such a deterrent was explained by the Supreme Court in *Vaughan:*

> It would be a sorry day if shipowners, knowing of the claim for maintenance and cure, could disregard it.... This would be a dreadful weapon in the hands of unconscionable employers and a plain inducement ... to use the withholding of maintenance and cure as a means of forcing sick seamen to go to work, when they should be resting.... This result is at war with the liberal attitude that heretofore has obtained and with admiralty's tender regard for seamen.

369 U.S. at 533, 82 S.Ct. at 1001. Although this reasoning was set forth in 1962, it is equally, if not more, applicable to arbitrary denials of maintenance and cure today. *See* Note 3.

### Conclusion

Federal courts have traditionally safeguarded the right of seamen to maintenance and cure by, among other things, awarding punitive damages or attorney's fees when such benefits are arbitrarily and willfully denied. By allowing the plaintiff to proceed against Sea-Land in the present case, this Court preserves that tradition. Despite its breadth, the exclusivity provision of section 745 does not foreclose the seaman from pursuing his private employer on a claim for which the SAA provides no remedy. Because the arbitrary and willful denial of maintenance and cure has no remedy under the SAA, the Court will deny the motion to dismiss with respect to Count Three of the Complaint.

Accordingly, it is

ORDERED:

1. That the Defendant, Sea-Land Corporation's Motion To Dismiss, filed herein on January 26, 1987, is granted in part and denied in part.

2. That the motion to dismiss is granted with respect to Counts One and Two of the Complaint, filed herein on September 30, 1986. The motion is otherwise denied.

3. That the Complaint is hereby dismissed with leave for the plaintiff to file an Amended Complaint in accordance with this Opinion. The Amended Complaint shall be filed within fifteen (15) days of the date of this Opinion and the defendants shall respond within ten (10) days of receipt of the Amended Complaint.