Stephen A. SMITH

v.

MAR, INC. et al.

Civ. A. No. 93–0016ML.

United States District Court,
D. Rhode Island.

Feb. 9, 1995.

Kevin Donius, Latti Associates, Boston, MA, for plaintiff.

R. Scott Blaze, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for U.S.

Robert E. Collins, Clinton & Muzyka, P.C., Boston, MA, for Mar, Inc.

*ORDER*

LISI, District Judge.

The Findings and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on **March 16, 1994** in the above-captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1).

*REPORT AND RECOMMENDATION*

LOVEGREEN, United States Magistrate Judge.

Before this court is defendant, MAR Incorporated's ("MAR"), motion for summary judgment pursuant to F.R.Civ.P. 56. This matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Court 32(c)(1). For the reasons stated, I recommend that MAR's motion for summary judgment be granted in part and denied in part.

*FACTS*

Plaintiff, Stephen A. Smith ("Smith"), was a seaman and a crewmember of the vessel TWR–841 on March 15, 1991 while the vessel was in navigable waters. At that time, vessel TWR–841 was owned by defendant, United States of America ("USA"), and operated by defendant MAR pursuant to a contract between USA (Naval Underwater Systems Center) and MAR effective January 1, 1988. That contract required MAR to supply services for the "operation and maintenance of Naval Underwater Systems Center small craft which support RDT & E projects."

On March 15, 1991, Smith was the chief engineer on TWR–841 and an employee of MAR. He was injured while descending a ladder leading from the galley to the engine-room.

Subsequently, Smith ceased his employment as chief engineer alleging those duties could not be fulfilled due to his injuries. He commenced this action against MAR and USA seeking, as to MAR, recovery under the Jones Act, 46 U.S.C.App. § 688; under the doctrine of unseaworthiness pursuant to the General Maritime Law; and for maintenance and cure. As part of his claim for maintenance and cure, Smith alleges MAR's failure to pay maintenance and cure was without justification, wanton and intentional thereby entitling him to recover punitive damages and attorney's fees against MAR.

Defendant MAR has filed this motion for summary judgment as to Counts I, II and III (all counts against it), arguing that Smith's claim, to the extent he has one, is solely against the USA pursuant to the provisions of the Public Vessel Act, 46 U.S.C.App. §§ 781–790, and the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752, since the incident occurred on a public vessel, and at the time, MAR was an agent of USA.

Plaintiff Smith opposes MAR's motion arguing that there are genuine issues of material fact—specifically whether TWR–841 was a public vessel on March 15, 1991 and whether, at that time, MAR was an agent of the USA.

*Discussion*

When determining a motion for summary judgment, I must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of*

*Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing F.R.Civ.P. 56(e)); *see Goldman,* 985 F.2d at 1116; *Lawrence,* 980 F.2d at 68; *Garside,* 895 F.2d at 48 ("[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" *Mesnick,* 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party."

*Goldman,* 985 F.2d at 1116 (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511).

If a seaman is injured on a public vessel then operated by an agent of the United States, his sole remedy is against the United States pursuant to the Public Vessels Act, 46 U.S.C.App. §§ 781–790, which incorporates by reference the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752, and no action lies against the agent, even if the agent is the seaman's employer. *Petition of United States,* 367 F.2d 505, 511–512 (3rd Cir.1966) *cert. denied,* 386 U.S. 932, 87 S.Ct. 953, 957, 17 L.Ed.2d 805 (1967); *Cruz v. Marine Transport Lines, Inc.,* 634 F.Supp. 107, 109–110 (D.N.J.1986); *Santos v. RCA Service Co.,* 603 F.Supp. 943, 946 (E.D.La.1985). Therefore, the issues to be addressed here are (1) whether the TWR–841 was a public vessel on March 15, 1991 and (2) whether MAR was at that time an agent of the United States.

A. Whether TWR–841 was a public vessel on March 15, 1991.

We think government ownership and use as directed by the government exclusively for a public purpose suffice without more to make a ship a public vessel.

*Petition of United States,* 367 F.2d 505, 509 (3rd Cir.1966).

Although there are few decisions interpreting the meaning of public vessel in the Public Vessels Act, those decisions suggest that a vessel with a military function are public vessels within the meaning of that Act.

*Santos v. RCA Service Co.,* 603 F.Supp. 943, 946 (E.D.La.1985).

In his complaint, Smith alleged that the vessel TWR–841 was owned by MAR and also that it was owned by USA. Defendant MAR denied ownership and defendant USA admitted ownership in their answers.

At the oral argument, counsel for the USA stated the vessel TWR–841 was owned by the USA. In his memorandum in opposition to this motion, Smith states "The vessel is, and has been at all times material hereto, owned by the USA." (See Plaintiff's Memorandum of Law in Support of His Opposition

to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 3).

In its motion for summary judgment, defendant MAR included in its Statement of Uncontested Facts "On March 15–16, 1991, the TWR–841 was owned by the United States of America." Plaintiff has not contested this statement in his opposition pleadings, but did state that the issue of public vessel was contested.

Plaintiff has not however brought forth any evidence which raises any question as to whether MAR owned the TWR–841. As noted above, the nonmoving party "may not rest upon mere allegation." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Consequently, I find that there is no genuine issue concerning the fact that U.S.A., not MAR, owned the TWR–841, at all times relevant to this action.

Defendant MAR includes in its Statement of Uncontested Facts "The contract provides that MAR Incorporated was to operate and maintain vessels and service craft which support the Naval Underwater Systems Center and other RDT & E Projects as specified." and "In accordance with the contract, the defendant MAR Incorporated was operating the TWR–841 on March 15, 1991." Plaintiff did not contest these statements in his opposition pleadings. The contract between the USA and MAR specifically states "The contractor shall perform the work specified below ... Operation and Maintenance of vessels and service craft which support NUSC and other RDT & E projects."

MAR filed a Reply Memorandum containing an affidavit of Denise Leibman, Vice President of Administration for MAR, identifying the contract, authenticating it and stating that it "was for the operation of the vessels." (Leibman Affidavit at 2.) No evidence of other use for the vessel TWR–841 on March 15, 1991 has been offered by any party. Consequently I find that MAR was operating vessel TWR–841, owned by the USA, on March 15, 1991, for the USA in support of the NUSC and other RDT & E projects.

There is no question here that vessel TWR–841 was, at all relevant times, owned by the United States and used in support of United States Navy projects. Other courts have held in less obvious situations that a ship was a public vessel. *See United States v. United Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976) (naval destroyer is a public vessel); *Bradey v. United States*, 151 F.2d 742 (2d Cir.1945) (vessel carrying coal belonging to army and bound for port to load munitions for war before sailing for theater of war is public vessel) *cert. denied*, 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483 (1946); *Geo. W. Rogers Const. Co. v. United States*, 118 F.Supp. 927 (S.D.N.Y.1954) (vessel chartered to United States and carrying fuel for Navy vessels held to be a public vessel); *Roeper v. United States*, 85 F.Supp. 864 (E.D.N.Y.1949) (vessel used for transportation of military personnel and supplies is a public vessel).

Here the vessel on which Smith was injured was owned by the United States and was involved in Navy projects which certainly would be a military function. Consequently I find the fact that the vessel TWR–841 was a public vessel on March 15, 1991 is not genuinely in dispute.

**B. Whether MAR was an agent of the United States on March 15, 1991.**

■ The Public Vessels Act, 46 U.S.C.App. §§ 781–790 establishes a libel in personam action against the United States in cases involving a public vessel. 46 U.S.C.App. § 781. The Public Vessels Act incorporates the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752. 46 U.S.C.App. § 782. The Suits in Admiralty Act provides a libel in personam action against the United States where a proceeding in admiralty could have been maintained against a private vessel. 46 U.S.C.App. § 742. The remedy of an injured seaman aboard a public vessel is exclusively against the United States. 46 U.S.C.App. § 745 states in pertinent part:

> where a remedy is provided by this Act [46 U.S.C.App. § 741 *et seq.*] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim....

■ Any right of recovery against the United States precludes any recovery for the same injury against MAR whose conduct may well have caused the plaintiff's injury, if MAR was the agent of USA on March 15, 1991. *Petition of United States,* 367 F.2d at 511; *Cruz v. Marine Transport Lines, Inc.,* 634 F.Supp. at 110.

As a matter of legal definition, "agent" of the United States is an appropriate characterization of such a contract operator of a public vessel as Mathiasen. The accepted distinction between "servant" and "independent contractor" may place Mathiasen in the latter category, since it is arguable that Mathiasen's day to day working of the ship was not subject to government control. See Restatement, Agency, 2d, § 2. But an independent contractor, no less than a servant may be an agent in that he is employed as a fiduciary, acting for a principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf. Restatement, Agency, 2d, § 14 N. *Petition of United States,* 367 F.2d at 509.

In *Petition of United States,* two vessels collided causing injury and death of seamen. One vessel was a naval supply ship owned by the United States and operated by Mathiasen's Tanker Industries, Inc. pursuant to a contract with Military Sea Transportation Service, an agency of the United States Navy. The vessel was to be used in the business of the government as a naval supply ship and had just delivered a cargo of jet aviation fuel for the Navy. The Court found Mathiasen owed the United States obedience and loyalty under the contract and was subject to the government's direction and control. Even though Mathiasen was a contract operator, it was still an agent of the United States for purposes of 46 U.S.C. § 745. *Id.* at 512. The exclusive remedy for the injuries and death caused by Mathiasen's negligent operation of the naval supply ship was against the United States. *Id.*

The inquiry here is directed to whether MAR acted as a fiduciary of the USA, undertook to act on USA's behalf and whether it was subject to the direction and control of USA. *Cruz v. Marine Transport Lines, Inc.,* 634 F.Supp. at 110.

The contract here clearly obligated MAR to operate and maintain NUSC small craft which support RDT & E projects. Under the contract, the government has substantial control over the number of manhours of direct labor needed to operate and maintain the vessels and the minimum qualifications of some crew members. MAR is required to keep the government informed of cost overruns and to keep a strict invoice schedule. MAR is required to maintain logs of various activities which are open to inspection by the government. The government set the operating hours and the tasks to be performed. In short, the contract covers over 35 pages of requirements and obligations imposed on MAR by the USA regarding this program.

Logic mandates the finding that MAR was the agent of USA at the time of this incident. MAR was employed as a fiduciary acting for the USA with its consent and subject to its extensive control and direction in the operation and maintenance of Navy vessels. Consequently, Smith's sole remedy for his injuries is against the USA.

C. Whether an action for punitive damages lies against MAR for wilful failure to pay maintenance and cure.

■ Plaintiff argues that even if his remedy is against only the USA, he may still maintain a cause of action against MAR, as vessel operator, for recovery of punitive damages for MAR's failure to pay maintenance and cure based on wanton and intentional disregard of plaintiff's rights. Plaintiff cites to *Shields v. U.S.,* 662 F.Supp. 187 (M.D.Fla. 1987) where the court permitted this cause of action. In *Shields,* the court held that the exclusivity provision of the Suits in Admiralty Act, 46 U.S.C. § 745, precluded, as to the agent of the United States, only those actions for which a remedy was provided by this Act.

The Court finds that, despite its broad construction, the language and intent of the exclusivity provision of Section 745 do not require dismissal of Sea–Land in this case. The exclusivity provision mandates that in cases "where a remedy is provided

by [the SAA]," such remedy is "exclusive of any other action *by reason of the same subject matter....*" 46 U.S.C. § 745 (emphasis supplied). With regard to the "subject matter" of an arbitrary and willful denial of maintenance and cure benefits, no remedy is provided by the SAA. Thus, the plaintiff is not precluded from maintaining an action against the agent of the United States in this case.

*Shields v. U.S.*, 662 F.Supp. at 190.

Defendant MAR argues that *Shields* has been overruled by *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) and that there is now no claim under general maritime law for punitive damages for failure to pay maintenance and cure.

Defendant reads *Miles* too broadly. The *Miles* Court stated "only that courts cannot create remedies under general maritime law that exceed those granted (or limited) by statute. While '*Miles* compels the conclusion that a plaintiff who is statutorily barred from receiving a punitive award cannot recover punitive damages by couching his claim in the judge-made general maritime law of negligence and unseaworthiness,' *Miles* says nothing of the plaintiff whose claim falls outside of the statutory umbrella of the Jones Act or DOSHA." *CEH, Inc. v. FV "SEA-FARER"*, 153 F.R.D. 491, 496 (D.R.I.1994) (citations omitted) (citing *Anderson v. Texaco, Inc.*, 797 F.Supp. 531, 535 (E.D.La.1992)).

A claim for punitive damages remains available under general maritime law unless *Miles* has explicitly stated otherwise. Here *Miles* has not stated that punitive damages are unavailable in a claim for maintenance and cure. Many courts have held, post *Miles*, that punitive damages may be recovered for failure to provide maintenance and cure. *See, e.g., Ortega v. Oceantrawl, Inc.*, 822 F.Supp. 621, 624 (D.Alaska 1992); *Ridenour v. Holland America Line Westours, Inc.*, 806 F.Supp. 910, 911 (W.D.Wash.1992); *Howard v. Atlantic Pacific Marine Corp.*, 1992 WL 55487, at *2 (E.D.La. Feb. 28,

1992); *Bachu v. International Marine Terminals*, 1991 WL 211519 (E.D.La. September 27, 1991); *Rowan Cos. v. Badeaux*, 1991 WL 175541, at *2 (E.D.La. August 28, 1991); *Collinsworth v. Oceanic Fleet, Inc.*, 1991 WL 165732 (E.D.La. August 20, 1991); *Odeco, Inc. v. Cornish*, 1991 WL 148746 (E.D.La. July 22, 1991).

Since plaintiff's claim for punitive damages for the agent's arbitrary and willful conduct in failing to pay maintenance and cure is a viable claim post *Miles* and is not precluded by the exclusivity provision of the Suits in Admiralty Act, 46 U.S.C.App. § 745, MAR's motion for summary judgment as to this claim should be denied.

*Conclusion*

For the reasons stated, I recommend defendant MAR's motion for summary judgment be granted as to Counts I, II and III (claim for maintenance and cure). I recommend defendant MAR's motion for summary judgment be denied as to Count III (claim for punitive damages).

██ Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[1] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[2]

---

1. Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

2. *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).