Romeo J. ABOGADO

v.

INTERNATIONAL MARINE
CARRIERS, et al.

Civ. A. No. G–95–027.

United States District Court,
S.D. Texas,
Galveston Division.

June 21, 1995.

**628**

Matthew D. Shaffer, Schechter & Associates, Houston, TX, for plaintiff.

Peter A. McLauchlan, Meyer Orlando & Evans, Houston, TX, for defendant International Marine Carriers.

William S. Busch, Cadwalader Wickersham & Taft, New York City, for defendant The Bank of New York Co., Inc.

## ORDER ON MOTION TO DISMISS

KENT, District Judge.

This is an admiralty action in which Plaintiff Romeo J. Abogado ("Abogado") has brought suit against Defendant International Marine Carriers, Inc. ("IMC") for injuries he allegedly sustained while working on a public vessel, the USNS SEALIFT INDIAN OCEAN, on navigable waters of the United States. This action was originally filed in the 122nd Judicial District Court of Galveston County, Texas, and was timely removed to this Court by IMC. Before the Court now is IMC's Motion to Dismiss. Because the Motion includes matters outside the pleadings that the Court has taken into consideration in its decision, the Court treats IMC's Motion as a Fed.R.Civ.P. 56 Motion for Summary Judgment rather than as a Fed. R.Civ.P. 12 dismissal. For the reasons stated below, the Court finds that IMC's Motion should be **GRANTED IN PART** and **DENIED IN PART.**

IMC first argues that it is not a proper party to this action because the SEALIFT INDIAN OCEAN is owned by the United States and qualifies as a public vessel. According to IMC, Plaintiff's suit against it is barred by the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.* ("PVA") and the Suits in Admiralty Act, 46 U.S.C.App. § 741 *et seq.* ("SAA"). The Court notes in this regard that it is difficult to determine precisely what claims Plaintiff originally brought against IMC because the Defendant failed to include a complete copy of Plaintiff's Original Petition in its Petition for Removal. (See Instrument # 1, Exhibit "A"). In his First Amended Complaint, filed after the Motion currently before the Court was filed, Plaintiff makes claims against IMC for maintenance and cure, loss of wages, and punitive damages for what is alleged to be IMC's "unreasonable, arbitrary, willful, and capricious" denial of necessary medical care. The Court therefore proceeds under the assumption that these three claims were also brought in Plaintiff's Original Petition, and it will analyze each claim for purposes of Defendant's Motion to Dismiss.

█ It is undisputed in this case that Plaintiff was employed as an able bodied seaman aboard the vessel SEALIFT INDIAN OCEAN on or about July 10, 1994. According to Plaintiff, he sustained an injury to his back on that date when he was ordered to work the line by a second mate without mechanical assistance or sufficient manpower. It is also undisputed that the SEALIFT

INDIAN OCEAN is a non-commercial public vessel of the United States used to transport Department of Defense cargoes as part of the nation's defense. According to Raymond Douglas, the Manager of Marine Personnel for IMC, the Military Sealift Command's operations office was responsible for scheduling the vessel to meet the Department of Defense's transportation requirements. It is undisputed that the SEALIFT INDIAN OCEAN was under the exclusive operational control of the Military Sealift Command and that IMC furnished day-to-day operations of the vessel as an agent for, and on behalf of, the Military Sealift Command. (See Defendant's Motion, Exhibit "A").

◼ Based on these facts, the Court has no hesitation in finding that the SEALIFT INDIAN OCEAN was a public vessel and that Plaintiff's remedies are defined by the SAA and PVA. In that regard, it is well-established that a Plaintiff can bring claims for loss of wages and for maintenance and cure only against the United States and not against a party acting as the government's agent in the operation of the vessel. *See, e.g., Manuel v. United States*, 50 F.3d 1253, 1259 (4th Cir.1995) (finding that a seaman on a public vessel can only bring his maintenance and cure action against the United States); *Shields v. United States*, 662 F.Supp. 187, 189 n. 4 (M.D.Fla.1987) (dismissing claims for maintenance and cure and for loss of wages brought by Plaintiff injured on a public vessel against the ship's agent/operator). Thus, insofar as Abogado has brought any claims for maintenance and cure and for loss of wages against Defendant IMC in this case, Defendant's Motion to Dismiss these claims is **GRANTED,** and these specific claims are hereby **DISMISSED WITH PREJUDICE** against IMC.

◼ The difficulty of this case, however, lies in the Plaintiff's third claim of punitive damages against IMC for what is alleged to be the Defendant's willful withholding of proper maintenance and cure payments to the Plaintiff. This issue, which has only recently begun to percolate through the judicial system,[1] has been given conflicting treatment by the courts. The first of these reported cases, *Shields*, 662 F.Supp. at 187, found that a seaman could make a claim for punitive damages against a Defendant acting as an agent for the government in the operation of a vessel. Several subsequent courts have held precisely the opposite. *Manuel*, 50 F.3d at 1253; *Manuel v. United States*, 846 F.Supp. 478 (E.D.Va.1994). In the only decisions in this Circuit, two District Courts have also come to opposite conclusions on this topic. *Farnsworth v. Sea–Land Serv., Inc.*, 1989 WL 20544 (E.D.La. March 7, 1989) (Duplantier, J.) (rejecting *Shields*); *Henderson v. International Marine Carriers*, 1990 A.M.C. 400 (E.D.La.1989) (Feldman, J.) (endorsing *Shields*). Thus, no binding authority exists on which this Court may rely, for the Fifth Circuit affirmed both *Farnsworth* and *Henderson* without a written opinion, thereby endorsing conflicting views on this vexing question.

◼ Therefore, the Court undertakes its own analysis of the relevant provisions of the SAA which control this issue. The SAA and the PVA both permit suits in admiralty to be brought against the United States for actions arising out of the operation of vessels owned by or operated for the United States. Ordinarily, of course, a seaman injured by the negligence of his employer may seek recovery against the employer under the Jones Act, 46 U.S.C.App. § 688 and under general maritime law. The SAA, however, provides that:

> where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim.

---

1. As one court noted, the absence until quite recently of reported cases on this vexing subject is explained by the fact that, until 1981, merchant seamen who sustained injuries on public vessels were automatically given treatment from the United States Public Health Service. After 1981, however, the Public Health Service closed, and these seamen were required to seek approval for medical treatment from their employers under employee health insurance policies. *Shields*, 662 F.Supp. at 189 n. 3.

46 U.S.C.App. § 745. Remedies provided by the PVA are also subject to the exclusivity provision of the SAA. 46 U.S.C.App. § 782.

The difficulty faced by courts in this matter is whether or not the exclusivity clause of § 745 forbids suits against the government's agent or whether some other aspect of the SAA allows such suits to be heard. In the first opinion on this matter, the *Shields* court found that § 745 does not prohibit suits against an agent because the legislative history of § 745 demonstrates Congress's intention to codify the Supreme Court's holding in *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949), that, while an agent was not liable for the negligence of the civil-service masters and crews who man public vessels, the agent would be responsible for any wrongdoing committed by its own employees. *See* S.R. 1782, 81st Cong., 2d Sess. (1950); 1950 U.S.Code Cong.Service, pp. 4209–10.

However, the *Shields* court's analysis of the legislative history of § 745 has been criticized by a more complete analysis of the Supreme Court caselaw surrounding the 1950 amendment to the SAA. *See Manuel*, 50 F.3d at 1256–57. In *Manuel*, the Fourth Circuit pointed out that the Supreme Court's analysis of the SAA had undergone several shifts in interpretation of the exclusivity clause in question here. *See, e.g., Johnson v. U.S. Shipping Board Emergency Fleet Corp.*, 280 U.S. 320, 327, 50 S.Ct. 118, 120, 74 L.Ed. 451 (1930) (holding that the remedies provided under the SAA are "exclusive in all cases where a libel might be filed under it."); *Brady v. Roosevelt Steamship Co.*, 317 U.S. 575, 578, 63 S.Ct. 425, 427, 87 L.Ed. 471 (1943) (overruling *Johnson* to the extent that it prevented a seaman from suing a private operator for the torts of its own employees); *Hust v. Moore–McCormack Lines, Inc.*, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534 (1946) (allowing a seaman to bring a general maritime tort claim under the Jones Act against the general agent as though the agent were his employer); *Cosmopolitan Shipping*, 337 U.S. at 783, 69 S.Ct. at 1317 (prohibiting suit against an agent for the master's negligence, but allowing suit against a private agent for the maritime torts of its own employees). As the *Manuel* court noted, *Cosmopolitan Shipping* overruled *Brady* in part, but it did not revive the exclusivity rule earlier set forth in *Johnson*. Instead, *Cosmopolitan Shipping* merely held that "a seaman employed by the United States on a United States vessel could not sue the private agent managing the vessel as if the agent were the seaman's employer". The Fourth Circuit concluded that *Cosmopolitan Shipping* still preserved the holding in *Brady* that a seaman could hold a private agent liable for the maritime torts of its own employees. *Manuel*, 50 F.3d at 1258. Based on its own reading of these cases, this Court agrees with the Fourth Circuit's learned and thorough analysis of the Supreme Court's holding in *Cosmopolitan Shipping*.

■ It is against this background that Congress amended the SAA in 1950. As the *Manuel* court stated, Congress clearly believed that the amendment incorporated the holding of *Cosmopolitan Shipping*.[2] Thus, Congress intended § 745 to be "exclusive" insofar as a seaman injured on a public vessel could bring Jones Act claims *only* against the government and not against the agent, but it did not intend the agent to be immune from maritime tort suits for the wrongdoings of its own employees.

■ The difficulty in applying this legislative history to the issue presently before the Court is that § 745 clearly allows seamen to assert claims for maintenance and cure against the government. Such claims, which are similar to worker's compensation, and are imposed without regard to fault, are independent of claims based on unseaworthiness or Jones Act negligence. Frank L. Maraist, Admiralty 185 (2d ed. 1988). The SAA, moreover, clearly states that "where a remedy is provided [by the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter...." 46

---

2. In a Senate Report on the amendment, Congress stated: "The first proviso [of amended 46 U.S.C. § 745] declares the rule announced by the Supreme Court in *Cosmopolitan Shipping Co.* ... and *Johnson* ... that the remedy under the Suits in Admiralty Act is exclusive." S.Rep. No. 2535, 81st Cong., 2d Sess. (Sept. 11, 1950), reprinted in 1951 A.M.C. 149, 151.

U.S.C. § 745. The question thus becomes whether punitive damages for the denial of maintenance and cure benefits fall within the exclusivity clause of § 745 together with general claims for maintenance and cure.

Those courts that have found that a seaman can assert claims for the willful denial of maintenance and cure claims against an agent have held that claims for punitive damages for such denial are not "of the same subject matter" as ordinary maintenance and cure claims. *Shields,* 662 F.Supp. at 189–90; *Henderson,* 1990 A.M.C. at 401–02. By contrast, those courts that have found that such claims cannot be asserted against a private agent have based their opinions on the proposition that punitive damage claims are merely extensions of ordinary maintenance and cure claims and are thus of "the same subject matter." *Manuel,* 50 F.3d at 1259.

This Court agrees with the *Shields* court that claims for the willful and arbitrary withholding of maintenance and cure claims can be asserted against a private agent, but it finds the logic of previous decisions to be only partially convincing on this point. First, the legislative history behind the 1950 amendment of § 745 is, frankly, ambiguous at best. As stated above, it is clear that Congress intended to incorporate the holding in *Cosmopolitan Shipping* that a seaman could hold a private agent liable for the negligence of its own employees. Nevertheless, it is also clear that Congress intended to incorporate the holding in *Johnson* that remedies under the SAA are "exclusive in all cases where a libel might be filed under it" and that the SAA "was intended to furnish the exclusive remedy in admiralty against the United States ... on all maritime causes of action arising out of the possession or operation of merchant vessels." *Johnson,* 280 U.S. at 327, 326–27, 50 S.Ct. 118, 120. This Court's reading of the caselaw suggests that most courts have taken this language in *Johnson* to mean that *all* claims for libel filed by a seaman can only be asserted against the government, even if the wrongdoing is committed by an agent's employee. If this is true, then *Johnson* and *Cosmopolitan Shipping* are irreconcilable, and Congress's intent

to incorporate these rulings in the 1950 amendment is self-contradictory.

However, the Court does not think that such a reading of either *Johnson* or § 745 is required, or even proper. Section 745 states that a seaman's remedies shall be exclusive *"where a remedy is provided by this chapter."* 49 U.S.C. § 745. By its plain language, § 745 does *not* state that all possible remedies a seaman could bring, such as actions against a private agent for the wrongdoings of its own employees as contemplated by *Cosmopolitan Shipping,* must be brought against the United States. Instead, it merely states that the exclusivity clause prohibits suit against the agent where—and only where—the SAA specifically provides a remedy.

 It is important to recall in this regard that the SAA does not itself create an independent body of rights. Rather, it is merely a waiver of the government's sovereign immunity to suit, much like the Federal Tort Claims Act. *See, e.g., Hillier v. Southern Towing Co.,* 714 F.2d 714 (7th Cir.1983). Clearly, where the government has not waived its right of sovereign immunity, it cannot be sued. Thus, the language of § 745 specifically states that its remedies are "exclusive of any other action by reason of the same subject matter against the agent" *only* where a remedy is provided by its own component statutes in order to enumerate those clearly defined areas where suit against the government is allowed.

 By this reasoning, if the SAA does not allow a remedy within its own component terms, this does not necessarily mean that the remedy is disallowed; it merely means that it does not fall within the exclusivity clause of § 745. In the case of punitive damages, for example, it is well-established that the government or its instrumentalities cannot be sued for punitive damages unless Congress explicitly authorizes liability for such damages. *See, e.g., Merced Production Credit Association v. Sparkman,* 703 F.2d 1097, 1101 (9th Cir.1983); *California v. Department of the Navy,* 431 F.Supp. 1271, 1293 (N.D.Cal.1977), *aff'd* 624 F.2d 885 (9th Cir.1980). Because it is clear the SAA nowhere contains authorization for such dam-

ages by a seaman, punitive damages cannot be sought from the government under the SAA or the PVA.

As suggested above, however, this does not mean that actions for the willful and arbitrary denial of maintenance and cure cannot be brought by a seaman; it only means that, because such actions are not authorized by the SAA, they do not fall within the exclusivity clause of § 745 requiring that they be brought against the government. Thus, the Court believes that such actions may be brought against private agents, not *despite* the exclusivity clause of § 745, but precisely *because* of that very language.

The Court also believes that this result brings harmony to the apparently contradictory holdings in *Johnson* and *Cosmopolitan Shipping* that Congress clearly intended to incorporate into the 1950 amendment to the SAA. As stated above, *Johnson* held that remedies under the SAA are "exclusive in all cases where a libel might be filed under it" and that the SAA "was intended to furnish the exclusive remedy in admiralty against the United States ... on all maritime causes of action arising out of the possession or operation of merchant vessels." *Johnson*, 280 U.S. at 327, 326–27, 50 S.Ct. at 118, 120. Because a cause of action for punitive damages cannot be asserted against the government pursuant to the SAA, such actions do not fall within the exclusivity language of *Johnson*, and *Johnson*'s language remains consonant with the Supreme Court's decision in *Cosmopolitan Shipping* that a seaman can hold a private agent liable for the torts of its own employees.

Nor in a case like the one currently before the Court does such an action fall within "the possession or operation of merchant vessels": Plaintiff does not claim that he is entitled to punitive damages for any action that occurred in the operation of a vessel; he merely claims that IMC's employees who are engaged in insurance administration denied him maintenance and cure benefits that he alleges were his by right. Based on this Court's extensive maritime experience, it cannot understand how such office-based, administrative action on IMC's part can realistically be said to be part of "the possession or opera-

tion of merchant vessels," and thus the Court does not believe that Plaintiff's claim falls within the exclusivity language of either *Johnson* or 46 U.S.C. § 745.

█ For these reasons, the Court does not believe that it is necessary to determine whether a claim for punitive damages falls within § 745's language excluding remedies against an agent "by reason of the same subject matter." 46 U.S.C.App. § 745. Nevertheless, even if the Court's analysis above is incorrect, it does not believe that a claim for the willful and arbitrary denial of maintenance and cure can be said to be of the "same subject matter" as a general claim for maintenance and cure. As pointed above, punitive damages are not available against the United States under the SAA, and thus they are not part of the "same subject matter" as any remedy actually contained within the SAA. *See Shields*, 662 F.Supp. at 190.

Those courts that have rejected this reasoning have relied on the premise that, because general claims for maintenance and cure and claims for the willful denial of such benefits both fall under general maritime law, they are therefore part of the same subject matter for purposes of § 745. *Manuel*, 50 F.3d at 1260. This Court disagrees. First, it is clear that in the maritime context, as in most others, punitive damages must be claimed under separate allegations in a Plaintiff's Complaint, must be assessed under a different standard of conduct, and serve completely different purposes from compensatory damages.

█ Maintenance and cure is a judicial, not a statutory, remedy under general maritime law. *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *White v. American River Transportation Co.*, 853 F.Supp. 300 (S.D.Ill.1993). As such, it flows from a contractual right implied in a seaman's employment contract with the ship owner. *Pelotto v. L. & N. Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979). Unlike compensatory damages, punitive damages are not assessed to compensate a Plaintiff for a pecuniary loss, but are intended to punish wrongdoers and deter future repetition of such conduct. *See Harper v. Zapata Off-*

*Shore Co.*, 563 F.Supp. 576, 582 (E.D.La. 1983), *rev'd on other grounds* 741 F.2d 87 (5th Cir.1984).[3] "Unlike compensatory damages, which are purely civil in character, punitive damages are, by definition, punishment. They operate as ... fines levied ... to advance governmental objectives." *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 47, 111 S.Ct. 1032, 1058–059, 113 L.Ed.2d 1 (1991) (O'Conner, J., dissenting). As such, punitive damages can only be assessed where the Defendant's conduct is malicious, outrageous, or otherwise morally culpable.

 In the context of maintenance and cure claims, it is not entirely accurate to state that punitive damages are merely extensions of an actual recovery of general maintenance and cure claims. In this Circuit, at least, Plaintiff's can be awarded punitive damages for a malicious denial of maintenance and cure claims and *not* be awarded general maintenance and cure claims, where the general claim is already covered by a Jones Act or an unseaworthiness recovery. The Fifth Circuit Pattern Jury Charges clearly state:

> If you find that the plaintiff is entitled to an award of damages under either the Jones Act or unseaworthiness claims, and if you award him either lost wages or medical expenses, then you may not award him maintenance and cure for the same period of time. That is because the plaintiff may not recover twice for the same loss of wages or medical expenses.
>
> . . . .

If you also find that the shipowner's failure to pay maintenance and cure was not only unreasonable, but was arbitrary and capricious, or willful, callous and persistent, you may also award the plaintiff punitive damages and attorney's fees. Any award of punitive damages and attorney's fees may be in addition to any compensatory damages you award because the shipowner unreasonably failed to pay maintenance and cure.

The Court believes that the fact that general maintenance and cure claims and punitive damage claims both fall under general maritime law no more means that these claims are mere extensions of one another than the fact that claims for breaches of insurance contracts and claims for breaches of the duty of good faith and fair dealing form distinct claims, despite the fact that both fall under general insurance law.[4]

 Finally, the Court's holding in this matter is in harmony with both the general purpose of the SAA and the traditional relationship between seamen and the admiralty court. It has long been established that the purpose of the SAA is to expand, not to restrict, seamen's rights, *Hust,* 328 U.S. at 707, 66 S.Ct. at 1218, and legislation for the benefit of seamen is to be construed liberally in their favor. *McMahon v. United States,* 186 F.2d 227 (3rd Cir.1950), *aff'd* 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951). If this Court were to hold that a seaman's right to sue for punitive damages is curtailed by the SAA, it would violate these well-established principles of admiralty jurisprudence and impose a

3. It is often said in this regard that punitive damages are justified along lines similar to that for criminal punishment. *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 16 (Tex.1994).

4. In Texas, for example, "a breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract." *Viles v. Security National Insurance Co.,* 788 S.W.2d 566, 567 (Tex.1990). Although the Court intends the analogy with insurance contracts to be illustrative only, like a shipowner's duty of maintenance and cure, the duty of good faith and fair dealing in the insurance context grows out of the insurance contract and is evaluated by a gross and callous standard of behavior on the part of insurance companies. As in the maintenance and cure context, breach-es of the duty of good faith and fair dealing are premised on the insurance company's "special relationship" with the insured because the insurance company is the sole evaluator of the insured's claims and thus exercises unilateral control over a relatively defenseless claimant. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 698 (Tex.1994). The proposition that shipowners have a "special relationship" with seaman, who have traditionally been seen as being at the mercy of the shipowner, is an ancient concept in admiralty jurisprudence. Finally, although a claim for punitive damages in the maintenance and cure area does not form the kind of separate tort claim that breaches of the duty of good faith and fair dealing do under state law, it is a separate claim giving rise to extra compensation, including attorney's fees.

penalty on a seaman like the Plaintiff who works for the government under the auspices of a private agent. Indeed, such a holding would allow agents like IMC to engage in an almost unrestricted and unpunishable manner that would violate all known principles of maritime law that have been developed through centuries. As the *Manuel* court itself recognized, refusing to allow punitive damages against an agent means that "private operators managing ships owned by the United States can arbitrarily and willfully refuse to pay an injured seaman's maintenance and cure without suffering any penalty." *Manuel*, 50 F.3d at 1260. Consequently, a seaman like Plaintiff Abogado would have fewer rights and remedies under the SAA than would a seaman working for a private employer, despite the fact that the SAA is intended to expand seamen's rights.

This Court cannot believe that such a result was the intent of Congress in passing the SAA or that disrupting the well-established principles of admiralty law can possibly be justified in this manner. Courts sitting in admiralty have traditionally been highly diligent in protecting a seaman's right to maintenance and cure, and the seaman has always been seen as a ward of the court. *Rutherford v. Sea–Land Service, Inc.*, 575 F.Supp. 1365, 1373 (N.D.Cal.1983). As the Supreme Court has long made clear, courts are to avoid the application of rules and interpretations "which would affect … [seamen] harshly because of the special circumstances attending their calling." *Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939). Furthermore, a shipowner's duty to provide maintenance and cure is one of the most pervasive of all maritime duties, "and is not to be defeated by restrictive distinctions nor narrowly confined." *Rutherford*, 575 F.Supp. at 1373. All ambiguities in the construction of such matters are to be resolved in favor of the seaman. *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 735, 63 S.Ct. 930, 936, 87 L.Ed. 1107 (1943). Although the Court remains mindful that IMC is not technically the "shipowner" or Plaintiff's "employer" in this matter, it is indisputably clear that finding that Plaintiff cannot assert punitive damages claims against a Defendant like IMC would potentially result in actions completely at odds with every moral and legal obligation traditionally upheld by admiralty courts.

For these reasons, the Court finds Defendant's Motion to Dismiss Plaintiff's claims for maintenance and cure and for loss of wages are **GRANTED,** and such claims are **DISMISSED WITH PREJUDICE.** Each party shall bear his or its own costs in regard thereto. Defendant's Motion to Dismiss Plaintiff's claim for punitive damages is **DENIED.** It is further **ORDERED** that the parties file no further pleadings on this matter, including motions to reconsider and the like. Instead, the parties are instructed to seek whatever relief they believe themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**