**Raoul CRUZ, Plaintiff,**

v.

**MARINE TRANSPORT LINES, INC., Defendant.**

Civ. A. No. 85–3833.

United States District Court, D. New Jersey, Civil Division.

March 27, 1986.

Avram G. Adler, Adler & Kops, Philadelphia, Pa., for plaintiff.

Lawrence B. Brennan, U.S. Dept. of Justice, New York City, for defendant U.S.A.

## OPINION

BISSELL, District Judge.

This matter arises out of a complaint filed on August 1, 1985 by Raoul Cruz, a merchant seaman in the United States Merchant Marine and a resident of San Francisco, against Marine Transport Lines, Inc. ("Marine Transport" or "MTL"). Jurisdiction is predicated on the General Maritime and Admiralty Law of the United States as modified by the Jones Act, 46 U.S.C. § 688. Defendant Marine Transport is a Delaware corporation having its principal place of business in New Jersey. In his complaint, plaintiff asserts that during his employ by Marine Transport as a crew member of the United States Naval Ship ("USNS") Sealift Pacific, on or about August 5, 1982, he was injured as a result of the negligence of defendant and the unseaworthiness of the Sealift Pacific. More specifically, he allegedly suffered injuries to his eyes, chemical burns on his body and shock when hoses connected to a pump which he was raising broke, spraying chemicals on his face and body. Plaintiff seeks $20,000 in damages.

Prior to this action, on July 31, 1984, plaintiff filed suit in the Northern District of California under the Public Vessels Act, 46 U.S.C. §§ 781–790, against the United States, the owner of the USNS Sealift Pacific, for the same alleged injuries. Because plaintiff failed to comply with the "forthwith service" requirements of 46 U.S.C. § 742, that action, which was then time barred, was dismissed on March 27, 1985 for lack of jurisdiction. Plaintiff appealed the district court's decision to the Ninth Circuit but later withdrew that appeal on September 5, 1985.

The United States, on behalf of its alleged agent, Marine Transport, moves for summary judgment pursuant to *Fed.R. Civ.P.* 56, asserting that this Court lacks subject matter jurisdiction under the exclusivity provision of 46 U.S.C. § 745, the Suits in Admiralty Act, and that plaintiff fails to state a claim upon which relief can be granted. Alternatively, if summary judgment is denied, the United States requests that this action be transferred to the Northern District of California pursuant to 46 U.S.C. § 782 or 28 U.S.C. § 1404(a). Lastly, the movant seeks the imposition of sanctions against plaintiff under *Fed.R.Civ.P.* 11.

The Court heard oral argument on November 25, 1985 but, upon plaintiff's request, reserved decision on the motion for summary judgment until after the Court had an opportunity to review the contract between the United States and Marine Transport.

■ The Court first addresses the argument raised by plaintiff that the United States, as a non-party to the suit, does not have standing to bring this motion. A similar issue was discussed in *Carter v. American Export Isbrandtsen Lines, Inc.*, 411 F.2d 1185 (2d Cir.1969). There, the motion for summary judgment was brought by the defendant contract operator, American Export Lines, Inc. However, defendant was represented by government attorneys, a procedure which the plaintiff deemed improper. The Second Circuit disagreed, stating,

> 28 U.S.C. § 547 provides that the United States Attorney shall defend "all civil actions, suits or proceedings in which the United States is concerned" which arise in his district. Since American Export was the agent of the United States, the representation was proper.

*Id.* at 1186. Applying the *Carter* ruling to the case at bar, the Court finds that since Marine Transport is the agent of the United States, as discussed *infra*, the filing of the within motion by the United States is proper.

Certain facts are undisputed by the parties. Both accept that from June 15, 1974 to the present, the USNS Sealift Pacific has been a public vessel of the United States under a bareboat charter to the Government, engaged in the worldwide transportation of petroleum products for the United States Department of Defense. It is also uncontested that plaintiff Raoul Cruz was employed as a crew member of the Sealift Pacific when he was allegedly injured on August 5, 1982. The vessel was at sea on that date and called at Guam on August 9, 1982 where plaintiff was treated.

The parties do disagree on whether or not Marine Transport has been the agent of the United States as its vessel contract operator for the USNS Sealift Pacific. Movant states that it contracted with MTL to act as its vessel operator pursuant to a fixed price contract (United States' Brief at 3–4) and that Marine Transport has been its agent prior to August 5, 1982 until the present (United States' Statement of Uncontested Material Facts at ¶ 2).

The crux of the United States' argument on the dismissal issue is that defendant MTL was acting as the United States' agent and that "[s]eamen's actions, such as plaintiff's, must be filed under the Public Vessels Act, 46 U.S.C. §§ 781–790, which incorporates by reference the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 [and] may be commenced only against the United States and not against its agents. *Carter v. American Export Isbandtsen Lines, Inc.*, 411 F.2d 1185 (2d Cir.1969)." (United States' Brief at 4).

In *Carter, supra*, the Second Circuit held that because plaintiff seaman, allegedly injured on a public vessel of the United States, had an adequate remedy against the United States under the Public Vessels Act and the Suits in Admiralty Act, his sole remedy was against the United States, not against defendant, the operator of that public vessel and the agent of the United States.

■ A seaman's remedy against the United States is provided in the Public Vessels Act, 46 U.S.C. §§ 781–790, which establishes that a libel in personam may be brought against the United States in cases involving public vessels. 46 U.S.C. § 781. The Public Vessels Act incorporates by reference the provisions of the Suits in Admiralty Act, 46 U.S.C. §§ 741–752. 46 U.S.C. § 782. Section 742 makes available a libel in personam against the United States in any case in which a proceeding in admiralty could have been maintained against a privately owned vessel had it been involved. 46 U.S.C. § 742. That the remedy of a seaman injured aboard a public vessel, such as the USNS Sealift Pacific, lies exclusively against the United States is provided in 46 U.S.C. § 745 which reads:

where a remedy is provided by this Act [46 USCS §§ 741 *et seq.* ] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim ...

In *Petition of United States*, 367 F.2d 505 (3d Cir.1966), *cert. denied*, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967), *reh'g denied*, 386 U.S. 1000, 87 S.Ct. 1303, 18 L.Ed.2d 354 (1967), dealing with claims of personal injuries and deaths under the Jones Act, 46 U.S.C. § 688, the court held that "by force of the exclusive liability clause of section 745, any right to recover against the United States here for injury caused by its public vessel precludes recovery for the same injury against the contract operator whose conduct was the immediate cause of the accident." *Id.* at 511. *See also, Smith v. United States*, 346 F.2d 449 (4th Cir.1965), *cert. denied*, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965); *Basile v. United States*, Civil No. 80–2453 (D.Mass.1982). The United States lists a full page of cites in support of this proposition. (United States's Brief at 7–8).

The caselaw clearly establishes that if MTL was indeed the agent of the United States, plaintiff's exclusive remedy for injuries allegedly sustained aboard the USNS Sealift Pacific lies against the United States and thus, the United States' motion for summary judgment must be granted.

Plaintiff asserts that the "full scale of activities entrusted to Marine Transportation Corporation indicates and demonstrates that it is an independent contractor." (Plaintiff's Brief at 6.) The Fourth Circuit has held that an operator of a Navy tanker could still be a government agent within the meaning of 46 U.S.C. § 745 whether it was a charterer, an owner *pro hac vice*, or an independent contractor under its agreement with the United States. *Smith v. United States, supra*, 346 F.2d at 453.

Also, the Third Circuit discussed this very issue in *Petition of United States, supra*, where it stated:

As a matter of legal definition, "agent" of the United States is an appropriate characterization of such a contract operator of a public vessel as Mathiasen. The accepted distinction between "servant" and "independent contractor" may place Mathiasen in the latter category, since it is arguable that Mathiasen's day to day working of the ship was not subject to government control. See Restatement, Agency, 2d, § 2. But an independent contractor, no less than a servant may be an agent in that he is employed as a fiduciary, acting for a principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf. Restatement, Agency, 2d, § 14 N.

367 F.2d at 509. Therefore, the focus of this Court's inquiry is whether or not MTL acted as a fiduciary of the Government, undertaking to act on the United States' behalf, and whether it was subject to the control and direction of the United States.

In *Petition of United States*, the Third Circuit concluded that Mathiasen, the contractor, "owed the United States obedience and loyalty and was in significant ways subject to the government's direction and control." *Id.* The contract between Mathiasen and the United States provided that Mathiasen was "to manage and conduct the business of the Government with respect to such tankers" furnished by the Government "solely in the public use or in the protection of the National interest or economy." Mathiasen agreed to "equip, fuel, supply, maintain, man, victual and navigate" the tanker. Mathiasen supplied the Master and a civilian crew. However, the Government prescribed the voyages and cargoes and maintained the power to terminate crew members. Wages of the crew and all costs of operating the ships, though initially paid by Mathiasen, were reimbursable by the Government. Before holding that Mathiasen was an agent of the United States within the meaning of § 745, the

court reviewed the legislative history of that section and concluded that "agent" was broadly defined, stating, "in the Congressional view the general statement of an agency concept as enacted included any instrumentality through and by which public vessels were operated." *Id.* at 510.

■ An examination of the contract executed between the United States and Marine Transport reveals that Marine Transport indeed acted as the "agent" of the United States within the meaning of 46 U.S.C. § 745 as that term was defined by the Third Circuit in *Petition of United States.* MTL's obligation of loyalty to the Government is evidenced by the contractual provision, similar to that in *Petition of United States,* that the tankers used in the operation of the contract "shall be employed solely in the public use or in the protection of the national interest." Contract for the Operation of Sealift Class Tankers, Article 2.

The contract further demonstrates that Marine Transport operated the USNS Sealift Pacific on behalf of the United States and that MTL was subject to the Government's overall control and direction. The opening Article of the contract reads:

> The Contractor shall take possession and operate the tankers in accordance with such directions or orders as to voyages and cargoes as the Commander, Military Sealift Command, or his authorized representative, prescribes, and upon the terms and conditions herein provided.

*Id.* at Article 1. Further on, the contract provides that "[t]he Contractor shall operate the tankers in such services as the Government, by written or telegraphic order may direct, including all matters relating to voyages and cargoes." *Id.* at Article 6(a). The parties agreed that the United States was to issue operating instructions. *Id.*

The extensive control of the Government over Marine Transport under the contract is exemplified by the requirement that MTL produce and provide to the Government upon request abstracts of daily entries in maintenance logs "showing care given the cargo, courses steered, distances run on each course, noon position, distance made good each day from noon to noon, consumption of fuel, and remainder of fuel in the bunkers at noon of each day, repairs and maintenance performed." *Id.* at Article 6(d).

The contract delegated to MTL the duty of employing personnel to man the tanker. However, the contract limited MTL's discretion in manning the tankers by explicitly setting forth the positions to be filled and the number of individuals to be hired at each position. *Id.* at Article 7(a). Moreover, the Government reserved to itself the right to terminate employees with whose services it was dissatisfied. *Id.* at Article 7(f). Similarly, employment of husbanding agents at United States and overseas ports was subject to the Government's approval. *Id.* at Article 11.

The affidavit of Richard Haynes, counsel to the Military Sealift Command ("MSC"), which is part of the Operating Forces of the United States Navy through which the Sealift Pacific was bareboat chartered to the Navy, indicates that Marine Transport was subject to the Government's direction and control:

> Marine Transport Lines (MTL) operates the USNS SEALIFT PACIFIC on our behalf as a public vessel pursuant to a fixed price contract with certain reimbursables and has nothing to do with the scheduling of the vessel. Since her delivery to MSC, the USNS SEALIFT PACIFIC has been under the exclusive operational control of MSC, sailing only when and where ordered by the MSC Tanker Division.

(Haynes Aff. at ¶ 7).

The Court determines that even if MTL was an independent contractor as plaintiff asserts or it handled the day to day working of the ship, the relationship between the United States and Marine Transport was that of principal and agent by virtue of the United States' "exclusive operational control" over the USNS Sealift Pacific. In

conclusion, the Court holds that plaintiff Cruz's sole remedy, although now time barred, was against the United States and thus, the United States' motion for summary judgment brought on Marine Transport's behalf must be granted. It is unnecessary for the Court to address the movant's alternative motion to transfer this action. Lastly, the Court denies the United States' request that sanctions be imposed pursuant to *Fed.R.Civ.P.* 11 as it does not deem plaintiff's complaint to have been interposed frivolously or for an improper purpose.