**Opinion issued August 30, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00745-CV

————————————

**VERLESHIA ROBINSON AND JOUAN JACKSON, Appellants**

**V.**

**AMERICAN OVERSEAS MARINE AND PATTON CALDWELL, Appellees**

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-47081**

# O P I N I O N

In this maritime case, Verleshia Robinson and Jouan Jackson sued American Overseas Marine and its employee Patton Caldwell.[1] The two defendants sought summary judgment against the plaintiffs on the ground that the plaintiffs' claims are barred by two federal statutes: the Suits in Admiralty Act[2] and the Public Vessels Act.[3] The trial court granted the motion and rendered judgment dismissing Robinson's and Jackson's claims with prejudice.

On appeal, Robinson and Jackson challenge the trial court's judgment dismissing their claims. Raising two issues, they contend that the trial court erred by rendering summary judgment against them.

We affirm.

## Background Summary

At the time of the alleged incidences giving rise to this suit, Verleshia Robinson and Jouan Jackson worked as crew members aboard the USNS *Benavidez.* They were employees of American Overseas Marine ("AMSEA").

---

[1]    In the trial court and on appeal, Robinson has spelled her first name four different ways: Verleshia, Velisha, Verlishia, and Verlisha. We use the spelling contained in the trial court's judgment which is "Verleshia."

[2]    *See* 46 U.S.C. §§ 30901–30918.

[3]    *See* 46 U.S.C. §§ 31101–31113.

2

As represented in the vessel's certificate of ownership, the *Benavidez* is a public vessel owned by the United States of America, represented by the Navy Department and operated by the Military Sealift Command. The vessel is used to transport military personnel and cargo.

In 2004, the United States, through the Military Sealift Command, contracted with AMSEA to operate and to maintain the *Benavidez*. Pursuant to the contract, the United States delivered the *Benavidez* to AMSEA's care and custody in May 2005.

In 2009, Robinson and Jackson filed suit against AMSEA and its employee Patton Caldwell, the *Benavidez*'s chief steward. In their first amended petition, Robinson and Jackson alleged as follows:

> While working as a member of the crew of the USNS *Benavidez* Plaintiff, Jouan Jackson, informed the captain of the ship and the designated person ashore, Robin Booth, of an assault upon crew member Verleshia Robinson by the Chief Steward, Patton Caldwell, while in the course and scope of her duties. Verleshia Robinson and Jouan Jackson also informed the Captain and the designated person ashore, Robin Booth, of the Chief Steward's lack of hygiene and lack of observance of health practices necessary to protect the safety of the crew of the ship including allowing human blood to contaminate the food stuffs of the USNS *Benavidez*. Verleshia Robinson and Jouan Jackson also informed the designated person ashore of the Chief Steward's and Captain's drunkenness while aboard ship during the course of their duties and informed the designated person ashore that such drunkenness endangered the entire crew and the seaworthiness of the vessel.

AMSEA had terminated Jackson's employment in July 2007. Jackson alleged that AMSEA fired him in retaliation for reporting the misconduct of Caldwell and the ship's captain. Jackson averred that he "was discharged in a foreign port and forced to fend for himself and to pay for his travel back to the United States from Crete, Greece in violation of the shipping agreement." Jackson also alleged that prior to his termination he was subjected to "cruel treatment and humiliation" onboard the vessel.

Jackson sued AMSEA and Caldwell for breach of his employment agreement and for wrongful termination. In addition, he asserted claims for negligence and vessel unseaworthiness under the Jones Act and for unseaworthiness and negligence under the general maritime law. Jackson sought, "[b]y reason of the shipping agreement," recovery for "pay and vacation and lodging in getting back to the United States." He also sought "pre-judgment interest for breach of contract, attorney fees and exemplary damages for the humiliation and damages caused by making a seaman have to fend for himself in a foreign port when he was deserted by the master of the vessel in a foreign port."

In the petition, Robinson alleged that Caldwell assaulted her while she was performing her duties onboard the *Benavidez*. She averred that Caldwell "attacked [her] while in the course and scope of [Caldwell's] duties while she was on duty in the galley of the ship." Specifically, Robinson alleged that Caldwell assaulted her

4

"by forcefully and aggressively poking his finger into her breast area." She averred that AMSEA has "condoned and ratified such assault." Robinson alleged that, after she reported shipboard misconduct, she "was subjected to abuse, cruel treatment, harassment and humiliation during her remaining period aboard the vessel by [Caldwell]."

Robinson asserted claims for negligence and vessel unseaworthiness under the Jones Act and for unseaworthiness and negligence under the general maritime law. In addition, Robinson asserted a civil assault claim. She sought "actual damages, exemplary damages and attorney fees" "[b]y reason of the physical assault upon her person."

After answering the suit, AMSEA and Caldwell filed a Rule 166a(c) traditional motion for summary judgment. They argued that the Suits in Admiralty Act and the Public Vessels Act barred Jackson's and Robinson's claims against them. Citing those two federal acts, the defendants asserted that, because they were acting as agents of the United States while operating the *Benavidez*, plaintiffs' exclusive remedy lies against the United States. On this ground, the defendants requested summary judgment and dismissal of the plaintiffs' claims.

Robinson and Jackson responded. They argued that, under the Suits in Admiralty Act and the Public Vessels Act, a plaintiff's remedy is exclusively against the United States only when a remedy against the United States is

5

permitted. The plaintiffs pointed out that two of the remedies they sought, attorney's fees and punitive damages, are not permitted against the United States. Thus, they argued, their claims are not barred by the two federal acts.

The trial court granted AMSEA's and Caldwell's motion for summary judgment and dismissed Jackson's and Robinson's claims with prejudice. This appeal followed. Robinson and Jackson raise two issues on appeal challenging the trial court's summary judgment. Jackson and Robinson (hereinafter "Appellants") contend that the Suits in Admiralty Act and the Public Vessels Act do not bar their claims against AMSEA and Caldwell (hereinafter "Appellees").

## Applicable Law and Standards

### A. Standard of Review

To prevail on a traditional summary judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

The movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005). In our de novo review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegle*r, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

Appellees moved for summary judgment on the basis that the undisputed facts and plain language of the Suits in Admiralty Act and the Public Vessels Act established, as a matter of law, that Appellants' claims against them are barred because Appellants' exclusive remedy lies against the United States. To the extent that the issues presented in this appeal involve statutory construction and the

7

application of a statute to undisputed facts, we determine the issues as a matter of law. *See Tex. Dep't of Family & Protective Services v. Alternatives in Motion, Inc.*, 210 S.W.3d 794, 798 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Gramercy Ins. Co. v. Auction Fin. Program, Inc.*, 52 S.W.3d 360, 363 (Tex. App.—Dallas 2001, pet. denied).

## B.     The Suits in Admiralty Act and the Public Vessels Act

The Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 30901–30918, and the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101–31113, permit admiralty suits to be brought against the United States for causes of action arising out of the operation of vessels owned by or operated for the United States. *See* 46 U.S.C. § 31102 (providing that "a civil action in personam in admiralty may be brought . . . against the United States for . . . damages caused by a public vessel of the United States"); *id.* § 30903 (providing, "In a case in which, if a vessel were privately owned or operated, . . . or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States . . . ."). Each act operates as a waiver of the sovereign immunity of the United States in admiralty cases, providing a "jurisdictional hook" on which to hang a traditional admiralty claim. *See Williams v. Central Gulf Lines*, 874 F.2d 1058, 1059 (5th Cir. 1989).

8

Litigants seeking to recover from the United States must, however, abide by the terms of the statutes. One of those terms is the exclusivity provision, found in section 30904 of the SAA. That provision states, "If a remedy is provided by [the SAA], it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States . . . whose act or omission gave rise to the claim." 46 U.S.C. § 30904. The PVA incorporates the exclusivity provision by reference. *See* 46 U.S.C. § 31103. Consequently, recovery against an agent of the United States operating a government-owned vessel is precluded on any claim for which either the SAA or the PVA provides a remedy. *See Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997 (9th Cir. 1997) ("[W]here a remedy lies against the United States, a suit against an agent of the United States 'by reason of the same subject matter' is precluded'"); *Manuel v. United States*, 50 F.3d 1253, 1255 (4th Cir. 1995) (explaining that SAA's exclusivity provision "precludes recovery against an agent of the United States operating a government-owned vessel on any claim for which the SAA or the PVA provides a remedy against the United States").

## Analysis

On appeal, Appellants identify two issues in which they assert that the exclusivity provision of the SAA does not bar their claims against Appellees.

9

## A.    Agent of the United States

In their first issue, Appellants contend that "Appellees do not qualify as agents of the United States for the actions giving rise to the claims in this case."

To show that they were "agents" of the United States, Appellees offered summary judgment evidence, including the affidavit of Christopher Nette, AMSEA's vice president of marine operations. Nette's affidavit mentions the document entitled "Certificate of Delivery and Acceptance." That document is appended to the motion for summary judgment. It indicates that AMSEA accepted delivery of the *Benavidez* on May 6, 2005 and states that AMSEA "assumes responsibility for the care and custody of the vessel."

In his affidavit, Nette also testified that the United States had "contracted with AMSEA to provide operation and maintenance services for the U.S.N.S. Benavidez under Contract No. N00033–04–C–5300." Excerpts from the contract are attached to the motion for summary judgment. The contract indicates that the United States engaged AMSEA to operate the *Benavidez*. The contract also shows that the government maintained a degree of operational control over the vessel. For example, the contract requires AMSEA "to use only experienced, responsible, and capable people to perform the work." The contract provides that the government maintained the power to require AMSEA "[to] remove from the job,

employees who endanger persons or property, or whose continued employment under this contract is inconsistent with military security."

Additionally, the contract expressly contemplated and discussed the application of the SAA and PVA in the event that suit was filed against AMSEA. The contract states, "As operators of public vessels of the United States, the Contractor [AMSEA] may become involved in litigation maintainable against the United States under the [PVA]." The contract mentions that the PVA incorporates provisions of the SAA. The contract indicates a presumption that the government will be the target of such suit and shows that, if such a suit is filed, the government will maintain control of the litigation.

Turning to the relevant jurisprudence regarding agency, courts have held that a contract operator of a naval vessel is an agent of the United States for purposes of the SAA's exclusivity clause. *See Tarver v. U.S.*, *Buck*, 785 F. Supp. 607, 611 (S.D. Miss. 1991); *Buck Kreihs Co. v. Int'l Marine Carriers, Inc.*, 741 F. Supp. 1249, 1250–51 (E.D. La. 1990). As one court summarized, "A long line of cases establishes that a contract operator of a naval vessel . . . is an agent of the United States for purposes of [the exclusivity clause]." *River & Offshore Servs. Co., Inc. v. United States*, 651 F. Supp. 276, 278 (E.D. La. 1987); *see also, e.g., Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911, 912 (5th Cir. 1974) (holding that company "engaged to manage and conduct the business of the Government with respect to

11

the operation of certain Navy tankers" was agent of the United States under exclusivity clause).

Courts have also held that the term "agent," as used in exclusivity provision, applies to those engaged by the United States "to manage and conduct the business" of a government vessel, suggesting that the exclusivity provision applies to general agents who manage and conduct the business of the vessel. *See Petition of United States*, 367 F.2d 505, 510 (3d Cir. 1966); *see also Servis v. Hiller Systems Inc*., 54 F.3d 203, 207–09 (4th Cir. 1995). Other courts have held that some degree of operational control must be maintained by the government for the private operator to be an agent under the SAA. *See, e.g., Nelsen v. Research Corp. of Univ. of Hawaii*, 805 F. Supp. 837, 847 (D. Haw. 1992) (citing *LeBlanc v. United States*, 732 F. Supp. 709 (E.D. Tex. 1990); *Cruz v. Marine Transport Lines*, 634 F. Supp. 107 (D. N.J. 1986)).

In this case, the summary judgment evidence shows that AMSEA contracted with the United States to operate and to maintain the *Benavidez* on behalf of the government. In other words, the evidence shows that AMSEA was engaged to manage and to conduct the maritime business of the government vessel. The evidence also shows that the government maintained a degree of operational control of the vessel indicative of an agency relationship.

12

Moreover, Appellants' allegations in their petition also support this conclusion. Appellants alleged that Caldwell committed the assault against Robinson "in the course and scope of his duties" as chief steward of the *Benavidez*. Appellants allege that they also were performing their duties as crewmembers of the *Benavidez*'s when the events giving rise to their claims occurred.

In addition, Jackson alleges that his employment was wrongfully terminated under the pretext of insubordination in violation of the shipping articles, which govern the conduct of seamen onboard the vessel. Employment decisions such as hiring and firing a crewmember for onboard conduct are necessarily a part of, and directly related to, a vessel's operation and mission.

We note that the court in *Moos v. Crowley Liner Services, Inc.* held that a private operator of a United States owned vessel was the government's agent within the meaning of the exclusivity provision in a suit brought by the operator's employee for wrongful termination. No. C 06-03791 SI, 2006 WL 2263904, at *2 (D.C. Cal. Aug. 8, 2006). To reach this conclusion, the court relied on the allegations in the plaintiff's complaint and the contract between the operator and the government indicating that the government had maintained general operational control. *See id.* In this case, a degree of operational control by the government regarding, inter alia, employment issues is evidenced by the contract provision in which the government (1) requires AMSEA to man the vessel "with only

13

experienced, responsible, and capable people to perform the work" and (2) retains the power to require AMSEA to remove an employee.

We conclude that AMSEA, and by extension its employee, Caldwell, offered sufficient evidence to conclusively establish that they were agents of the United States within the meaning of the SAA's exclusivity provision. *See Dearborn*, 113 F.3d at 1000 (holding that that private charterer was "agent" of the United States within meaning of SAA because provisions in agreement with government indicated that charterer consented to operate ship on the government's behalf and subject to its overall control); *Favorite v. Marine Personnel & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992) ("Because 'the general statement of an agency concept . . . include[s] any instrumentality through and by which the public vessels are operated,' MTL was an agent of the United States."); *Petition of United States*, 367 F.2d at 509–510 (concluding private operator was agent of United States because it agreed to manage and conduct business of government with respect to the vessel and government retained overall control and direction of operations). Thus, we hold that Appellees met their summary-judgment burden as movants. *See* TEX. R. CIV. P. 166a(c). The burden then shifted to Appellants, as nonmovants, to raise a genuine issue of material fact regarding whether Appellees were agents within the meaning of the exclusivity provision. *See Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.)

14

(explaining that once summary movant meets its burden with respect to establishing affirmative defense, then non-movant must adduce evidence raising a material fact issue on his counter-defense in avoidance of affirmative defense).

In their summary-judgment response, Appellants made no argument and offered no proof for the purpose of showing that a material fact issue existed on the question of agency. Indeed, on appeal, Appellants do not dispute that Appellees were the government's agents for purposes of conducting the business operations of the *Benavidez*. Rather, Appellants contend that the intentional torts giving rise to their claims, such as assault, "are outside the scope of an agency relationship." Without supporting legal authority, Appellants contend, "The course and scope of the agency relationship, and whether an agent is acting within it or not, are, at the very least, questions of material fact and thus inappropriate for summary judgment." Appellants, however, did not raise this argument in the trial court.

We recognize that, if a defendant moves for summary judgment based on the assertion that suit against it is barred by the exclusivity clause, it is the defendant's burden to prove conclusively such defense as a matter of law. *See Alexander v. Walker*, 355 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We also recognize that the non-movant's failure to answer or to respond cannot supply by default the summary-judgment proof necessary to establish the movant's right. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

15

However, as discussed, Appellees met their summary-judgment burden to show that they were agents within the meaning of the exclusivity provision in the context of this litigation.

It is well-established that a response to a motion for summary judgment must fairly inform the movant and the trial court of the arguments that the nonmovant contends defeats the motion. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *see also* TEX. R. CIV. P. 166a(c) (providing that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal"). We cannot reverse a summary judgment based on arguments not expressly presented to the trial court by written motion or other response to the summary judgment motion. *See* TEX. R. CIV. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. To the extent that Appellants now assert that the alleged tortious conduct by Appellees exceeded the scope of the agency, Appellants should have presented this argument in the trial court for it to be considered on appeal.[4] *See* TEX. R. CIV. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Because they did not assert the argument in the trial court, we do not consider it on appeal.

---

[4] We note that at least one court has rejected the argument that the exclusivity provision does not apply when the intentionally tortious conduct of a private vessel operator exceeds the scope of its agency authority granted by the government. *See, e.g., River & Offshore Servs. Co. v. United States*, 651 F. Supp. 276, 280 (E.D. La. 1987).

16

*See* TEX. R. CIV. P. 166a(c); *see also* TEX. R. APP. P. 33.1(a)(1) (requiring that, as a prerequisite for presenting a complaint for appellate review, record must show that the complaint was made to trial court by timely request, objection, or motion); *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (reasoning that argument not expressly presented to trial court in response to motion for summary judgment was waived).

We overrule Appellants' first issue.

## C.    Punitive Damages and Attorney's Fees

In their second issue, Appellants contend, as they did in the trial court, that the SAA's exclusivity provision does not bar their claims against Appellees for attorney's fees and punitive damages because a plaintiff's remedy is exclusively against the United States only when a remedy against the United States is permitted.    To reiterate, the SAA's exclusivity provision states, "If a remedy is provided by [the SAA], it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States . . . whose act or omission gave rise to the claim."    46 U.S.C. § 30904.    Appellants correctly point out that they cannot seek attorney's fees and punitive damages against the United States.[5]    Appellants assert that, because they cannot pursue these

---

[5]    Punitive damages are unavailable in actions against the United States absent specific statutory authorization.  *See Kasprik v. United States*, 87 F.3d 462, 465 (11th Cir. 1996) (citing *Missouri Pacific R.R. Co. v. Ault*, 256 U.S. 554, 564, 41 S.

17

claims against the United States, the SAA permits them to pursue the claims against Appellees.

In support of their position, Appellants cite the following federal district court cases: *Shields v. United States*, 662 F. Supp. 187 (M.D. Fla. 1987); *Henderson v. Int'l Marine Carriers*, 1990 A.M.C. 400 (E.D. La. 1989), *aff'd mem.*, 921 F.2d 275 (5th Cir. 1990); and *Abogado v. Int'l Marine Carriers*, 890 F. Supp. 626 (S.D. Tex. 1995). In *Shields*, the court determined that the exclusivity provision did not prevent the plaintiff from seeking punitive damages and attorney's fees from his employer, a private operator of a government vessel, which had failed to pay him maintenance and cure benefits. 662 F. Supp. at 188. To reach this conclusion, the court relied on the requirement in the exclusivity provision that a claim will be precluded against an agent only when it arises out of the same subject matter as a claim for which he has a remedy against the United States. *See id.* at 189. In permitting the claim against the agent operator, the *Shields* court reasoned that the plaintiff's claim against the vessel operator, arising from the arbitrary and willful conduct of its insurance department's handling of his

Ct. 593 (1921) ("It is well established that in the absence of specific statutory provision for penalties the federal government may not be held liable for damages which do not merely compensate but punish.")). Similarly, attorney's fees may not be awarded against the United States in the absence of specific statutory authority. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 267–68, 95 S. Ct. 1612, 1626–27 (1975). Neither the SAA or nor the PVA contains a provision permitting the recovery of attorney's fees or punitive damages against the United States.

18

maintenance and cure benefits, was "an entirely different subject matter" from the his negligence and unseaworthiness claims against the United States. *Id.* at 190.

Taking an approach similar to that in *Shields*, the court in *Abogado* allowed a plaintiff to pursue his suit for punitive damages against the private operator of a vessel owned by the United States for the operator's failure to pay him maintenance and cure benefits. *Abogado*, 890 F. Supp. at 631. The court found it significant that the plaintiff's punitive damages claim did not arise from "any action that occurred in the operation of the vessel." *Id*. at 632. Instead, the plaintiff premised his claim on allegations that the private vessel operator's employees, who were responsible for administering insurance benefits, had willfully withheld maintenance and cure benefits from him. *Id*. The court allowed the claims; it reasoned that "such office-based, administrative action" by the vessel operator could not "realistically be said to be part of the possession or operation of merchant vessels." *Id*. The court agreed with the plaintiff that the punitive damages claim was not part of the same subject matter as the plaintiff's general maintenance and cure claims, which could be asserted against the United States. *See id*. Thus, the punitive damages claim was not covered by the exclusivity provision. *See id*. at 631, 634.

Relying on *Shields*, the court in *Henderson* also permitted the plaintiff's claim against the operator agent for willful and arbitrary failure to pay maintenance

19

and cure. 1990 A.M.C. at 402. The court based its decision on evidence showing that the operator agent's employees, and not those of the United States, were responsible for the failure to disburse payments to the plaintiff. *See id.*

As pointed out by Appellees, the Third, Fourth, and Eleventh Circuits have analyzed and rejected the reasoning of *Shields*, *Abogado*, and *Henderson*. *See Manuel*, 50 F.3d at 1260 (disagreeing with *Shields*); *Kasprik v. United States*, 87 F.3d 462, 465–66 (11th Cir. 1996) (adopting *Manuel* and rejecting *Shields*); *accord O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85–87 (3d Cir. 1996) (adopting *Manuel* and rejecting *Shields*, *Abogado*, and *Henderson*).

In *Manuel*, the Fourth Circuit determined as follows:

> The subject matter of this claim under the SAA is the seaman's entitlement to maintenance and cure resulting from his injury while employed aboard the ship. We find that the seaman's action against the operator for the arbitrary and willful failure to pay maintenance and cure deals with the same subject matter.

50 F.3d 1259. The Fourth Circuit reasoned that "[a]lthough the claim against the operator highlights the wrongful conduct of the operator's administrative employees, the action nonetheless arises from the seaman's entitlement to maintenance and cure resulting from his injury while employed aboard the ship." *Id.*

After a thorough review of the legislative history of the SAA and the pertinent jurisprudence, the *Manuel* court explained,

20

We conclude that Congress intended [the exclusivity provision] to require seamen to sue the United States on any maritime action arising out of an injury on a ship owned by or operated for the government, even if the action arises from the negligence of an agent's employee. Therefore, we conclude that the exclusivity provision . . . was intended to require a seaman injured aboard a government-owned ship to bring his maintenance and cure action against the United States [and not against the private operator of the vessel].

*Id*. at 1259. The court held that all of the plaintiff's claims must be brought solely against the United States, including the willful failure to pay maintenance and cure for which the plaintiff sought punitive damages and attorney's fees. *See id.*

In reaching its holding, the *Manuel* court offered the following critique of *Shields*:

Apparently, the *Shields* court went astray by treating the arbitrary and willful refusal to pay maintenance and cure as a cause of action separate from the simple failure to pay maintenance and cure benefits when due. There is no cause of action specifically for the arbitrary and willful refusal to pay maintenance and cure. Under general maritime law, a seaman injured while employed aboard a ship is entitled to receive maintenance and cure, and he can bring an admiralty suit to recover any unpaid maintenance and cure benefits. Courts have long awarded punitive damages to seamen where maintenance and cure benefits have been arbitrarily and willfully denied. Punitive damages, however, is merely an additional remedy in the seaman's maintenance and cure action. The *Shields* court, in effect, turned the punitive damages remedy into a separate cause of action.

*Id*. at 1259–60 (citations omitted).

At the end of its opinion, the *Manuel* court offered the following summary:

Having rejected the reasoning of *Shields*, we conclude that the exclusivity provision . . . bars [plaintiff] Manuel's proposed action

21

against [operator agent] IMC for the arbitrary and willful failure to pay maintenance and cure. The SAA provides Manuel with a remedy against the United States to vindicate his entitlement to maintenance and cure. Because of the exclusivity provision, the remedy provided by the SAA precludes any action against IMC that deals with the same subject matter. Manuel's proposed action against IMC, although highlighting IMC's wrongful handling of his benefits claim, nonetheless arises from his entitlement to maintenance and cure resulting from his injury while employed aboard a ship. Because the SAA provides a remedy by reason of that subject matter, Manuel cannot bring a maintenance and cure claim against IMC.

*Id*. at 1260 (citations omitted).

In *O'Connell*, the Third Circuit adopted *Manuel*'s holding. 90 F.3d at 86–87. The *O'Connell* court explained that "the reasoning of . . . *Manuel* is persuasive, and we have no reluctance in following that rationale. . . . We agree that an action for arbitrary denial of maintenance and cure benefits when due arises 'by reason of the same subject matter' as the available claim against the United States for maintenance and cure." *Id*. Similarly, in *Kasprik*, the Eleventh Circuit concluded that "any claim for failure to pay maintenance and cure, even one alleging the arbitrary and willful denial of such, is 'by reason of the same subject matter' as the seaman's entitlement to maintenance and cure resulting from his injury" and thus, per the exclusivity clause, could not be maintained against an agent of the United States. 87 F.3d at 466.

Besides the Third, Fourth, and Eleventh Circuit courts, a number of federal district courts, and the Supreme Court of Alaska, have rejected *Shields*'s reasoning.

22

Those courts have also held that a plaintiff seaman cannot pursue a willful failure to pay maintenance and cure claim under the SAA against a private operator agent of a government-owned vessel. Instead, the plaintiff must pursue all of his claims against the United States, even though he will not be permitted to recover punitive damages or attorney's fees against the government. *See, e.g., Reece v. Keystone Shipping Co.*, No. C09-1610JLR, 2010 WL 2331068, at *3 (W.D. Wash. Mar. 25, 2010); *Sharian v. United States*, No. C 98–4578, 1999 WL 1427723, at *3 (N.D. Cal. Oct. 5, 1999); *Stone v. Int'l Marine Carriers, Inc*. 918 P.2d 551, 556–57 (Alaska S. Ct. 1996); *Stewart v. United States*, 903 F. Supp. 1540, 1545 (S.D. Ga. 1995); *Smith v. Mar, Inc*., 896 F. Supp. 75, 77 (D. R.I. 1995); *Fratus v. United States*, 859 F. Supp. 991, 995 (E.D. Va. 1994). In contrast, no reported case has followed the holdings of *Shields*, *Abogado*, and *Henderson*.

Unlike the preceding cases, the instant case does not involve the issue of whether a plaintiff may, under the SAA's exclusivity clause, pursue a claim for the willful failure to pay maintenance and cure benefits against a private operator agent of a government-owned vessel. Nonetheless, the analyses in those cases—including that found in both the *Manuel* and the *Shields* lines of cases—are useful in determining the issue with which we are presented.

In plaintiffs' petition, Robinson "seeks actual damages, exemplary damages and attorney fees" "[b]y reason of the physical assault upon her person." Jackson

23

seeks "attorney fees and exemplary damages for the humiliation" arising from the alleged retaliatory acts and discharge following Jackson's report of Caldwell's and the captain's misconduct to company representatives.

The basis for their punitive damages and attorney's fees claims is also specifically addressed in Appellants' summary-judgment response:

> This is a case about a crew member assaulting another crew member and the employer openly and callously ignoring and disregarding the violent propensities of the attacker. Later, the employer retaliated against a witness who stood up and confirmed the attack by the perpetrator and Defendant, Patton Caldwell. This is why my clients are seeking punitive damages and attorney fees.

A review of these allegations shows no distinction between them and the allegations asserted by Appellants to support their maritime claims for which they seek compensatory damages. In this regard, the present case is distinguishable from both the *Shields* and the *Manuel* lines of cases. All of those cases involved specific conduct relied on by the plaintiff to support punitive damages and attorney's fees that was arguably distinct from the specific conduct alleged to support the claim for compensatory damages. That distinction was critical in those cases.

Here, Appellants' punitive damages and attorney's fees claims are not only "by reason of the same subject matter" but also by reason of the same specific conduct as their claims for compensatory damages. This is true regardless of

24

whether it can be agreed upon that the claims in the *Shields* and the *Manuel* lines of cases were by reason of the same subject matter.

Moreover, unlike the allegations in those cases, the conduct asserted to support the punitive damages and attorney's fees claims in this case occurred onboard the *Benavidez* and, as alleged, relate to, and arise from, the management and operation of the vessel. *Cf. Shields*, 662 F. Supp. at 190 ("In the present case, the plaintiff seeks recovery from Sea-Land not for the wrongful acts of its master or crew in the management of a United States vessel, but for the arbitrary and willful conduct of its insurance department."). In other words, Appellees were acting as agents of the United States at the time of the alleged misconduct giving rise to Appellants' claims. The SAA provides a remedy against the United States for compensatory damages suffered as a result of the maritime claims alleged by Appellants.[6] *See* 46 U.S.C. §§ 31102; 30903. Simply because the remedy

---

[6] A review of the case law indicates that, for example, Appellants would be permitted to pursue—though they may not prevail—an unseaworthiness claim against the United States based on the assaultive and retaliatory conduct, which Appellants allegedly experienced onboard the *Benavidez*. *See Sloan v. United States*, 603 F. Supp. 2d 798, 811 (E.D. Pa. 2009) (evaluating, in suit brought under PVA and SAA against United States as vessel owner, seaman's unseaworthiness claims arising from assault and emotional abuse by fellow crewman onboard vessel); *see also Len v. American Overseas Marine Corp.*, 171 Fed. App'x. 489, 492 n.2 (5th Cir. 2006) (recognizing that SAA provides remedy against United States as vessel owner for seaman's claim of retaliatory discharge by vessel operator). We do not, however, delve into the merits of any potential claim at this stage in the analysis. *See Nelsen v. Research Corp. of Univ. of Haw.*, 752 F. Supp. 350, 355–56 (D. Haw. 1990) ("Plaintiff confuses the question [of] whether he could actually recover against the United States on the merits of his hypothetical claim with the narrower jurisdictional inquiry sufficient to satisfy [the SAA]," recognizing that

25

contemplated by the SAA does not encompass punitive damages and attorney's fees does not render the remedy permitted under the SAA any less exclusive. *See Stiward v. U.S., Marine Transp. Lines, Inc.*, No. Civ. A. 05-1926, 2005 WL 3543736, at \*5 (E.D. La. Oct. 13, 2005).

In sum, Appellants seek punitive damages and attorney's fees for the alleged assault and subsequent retaliatory conduct by Appellees. Because the SAA provides a remedy by reason of that subject matter, Appellants' claims against Appellees are barred by the exclusivity provision. *See* 46 U.S.C. § 30904; *Manuel*, 50 F.3d at 1260. We hold that the trial court correctly granted Appellees' motion for summary judgment and properly dismissed Appellants' claims with prejudice. *See* 46 U.S.C. § 30904.

We overrule Appellants' second issue.

### Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Justice Sharp, concurring with the judgment, in an opinion to follow.

---

the SAA does not require courts "to conduct a mini-trial to determine whether the plaintiff would in fact prevail against the United States").